18 F.3d 562
 UNITED STATES of America, Appellant/Cross-Appellee,
v.
Virginia T. MORRIS, Appellee/Cross-Appellant.
UNITED STATES of America, Appellant/Cross-Appellee,
v.
William T. HIGGS, Appellee/Cross-Appellant.
 Nos. 93-1698, 93-1757, 93-1706 and 93-1755.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 8, 1993.
Decided March 3, 1994.
Rehearing and Suggestion for Rehearing En Banc Denied in
Nos. 93-1706, 93-1755 April 18, 1994.
 
 1
 Before McMILLIAN and MAGILL, Circuit Judges and JACKSON,* District Judge.
 
 
 2
 JACKSON, District Judge.
 
 
 3
 Following a jury trial, Virginia T. Morris ("Morris") and William T. Higgs ("Higgs") were found guilty of bank fraud and money laundering. The jury additionally found Morris guilty of making false entries in the books of a federally-insured bank and making a false material statement to a federal bank examiner. The United States appeals the sentences imposed by the district court. Higgs cross-appeals his conviction and Morris cross-appeals her conviction and sentence. We affirm the convictions but vacate the sentences and remand for resentencing.
 
 I. BACKGROUND
 
 4
 Northwest National Bank was a financial institution located in Fayetteville, Arkansas, until its failure in 1991. Morris was an officer and director of Northwest National Bank and of its holding company, Northwest Bancorporation of Arkansas, Inc. Her husband, Joe Benton Morris, Sr., was a member of the board of directors of each entity.
 
 
 5
 Houston Taylor Motors, Inc. was an automobile dealership in Fayetteville, Arkansas. Morris, Joe Benton Morris, Sr. and Higgs, their nephew, were officers, directors and shareholders of Houston Taylor Motors, Inc. The dealership was operated by Joe Benton Morris, Sr. and Higgs.
 
 
 6
 On June 17, 1992 Morris, Higgs and Joe Benton Morris, Sr. were jointly charged in a seven-count indictment. Count One charged all three defendants with devising and executing a scheme and artifice to defraud Northwest National Bank during the period January 1, 1990 to January 17, 1991, in violation of 18 U.S.C. Secs. 1344 and 2. According to the indictment, the defendants' scheme included drawing insufficient funds checks on an account maintained in the name of Midwest Trading Co. ("Midwest Trading") at Northwest National Bank. At various times the defendants deposited into the Midwest Trading account insufficient funds checks drawn on Houston Taylor Motors' account at McIlroy Bank & Trust in order to make the Midwest Trading account reflect a positive balance and to conceal the overdraft status of the account from Northwest National Bank's board of directors. The defendants then "covered" the Houston Taylor Motors insufficient funds checks by depositing insufficient funds checks drawn on Midwest Trading's account at Northwest National Bank into the McIlroy Bank account. It was also part of the scheme that the defendants drew insufficient funds checks on Houston Taylor Motors' accounts at McIlroy Bank and at First State Bank and used them to obtain cashier's checks and other funds from Northwest National Bank. The issuance of the cashier's checks was approved by Morris.
 
 
 7
 Count Two charged Morris and Higgs with bank fraud, in violation of 18 U.S.C. Secs. 1344 and 2. According to the indictment, the defendants devised a scheme to defraud the First National Bank of Roland, Oklahoma by falsely representing to the bank that the purpose of a $200,000 loan to Higgs was for "Wholesale automotive trading stock, inventory and expansion" when, in fact, approximately $174,283.96 of the loan proceeds were to be used to cover overdraft checks that had been paid on the Midwest Trading account at Northwest National Bank.
 
 
 8
 Count Three charged Morris and Higgs with money laundering, in violation of 18 U.S.C. Secs. 1956(a)(1)(A)(i) and 2. It was alleged that on August 10, 1990 the proceeds of the $200,000 loan from the First National Bank of Roland were deposited in an account controlled by Higgs at Superior Federal Bank in Fayetteville, Arkansas and that $174,283.96 was thereafter withdrawn and transferred to Midwest Trading's account at Northwest National Bank. The indictment further alleged that Morris and Higgs conducted this financial transaction with the intent to promote the carrying on of a specified unlawful activity, i.e. bank fraud.
 
 
 9
 Counts Four, Five and Six charged Morris alone with causing false entries to be made in the books and records of Northwest National Bank, in violation of 18 U.S.C. Sec. 1005. Count Four related to Morris causing five checks totalling $155,848.41 to be issued on the bank holding company's checking account when there were insufficient funds in the account. Morris then caused the checks to be entered in the "Unposted Suspense Debits--DDA" account which resulted in a misstatement of the position of the bank holding company's account and, consequently, a misstatement of Northwest National Bank's financial position. Count Five related to Morris causing the purpose of a $100,000 loan made by Northwest National Bank to Vance Harp to be recorded on the bank's records as "property improvements" when the loan proceeds were actually used for the benefit of the bank holding company. Count Six related to Morris causing the purpose of a $300,000 loan from Northwest National Bank to Levoy Pat Demaree to be recorded on the bank's records as "balance refinancing loans, increase wattage, tower, bldg. etc.--(RLPD, Inc.) capital investment, equipment purchases, additional tax money" when two-thirds of the loan proceeds were actually used to buy stock in the bank holding company.
 
 
 10
 Finally, Count Seven charged Morris with making a false material statement to a bank examiner, in violation of 18 U.S.C. Sec. 1001. It was alleged that Morris falsely told the bank examiner that she did not know how the proceeds of the Demaree loan had been used.
 
 
 11
 The presentence report for Morris reflected a total offense level of 28 and a criminal history category of I, resulting in a guideline range with respect to imprisonment of 78 to 97 months. The district court exercised a downward departure, treating the money laundering charge in Count Three the same as bank fraud. The district court further reduced Morris' total offense level to 20 based upon the finding that she was not an organizer or a leader within the meaning of Sec. 3B1.1(c) of the United States Sentencing Guidelines (U.S.S.G.) (Nov. 1992). The district court's actions resulted in an imprisonment range of 33 to 41 months. Morris was sentenced to a thirty-six month term of imprisonment.
 
 
 12
 The presentence report for Higgs reflected a total offense level of 22 and a criminal history category of I, resulting in a guideline range with respect to imprisonment of 41 to 51 months. The district court exercised a downward departure with respect to Higgs, again treating the money laundering count the same as bank fraud. The district court found Higgs' total offense level to be 13, with a consequent guideline range of 12 to 18 months' imprisonment. Higgs was sentenced to a term of twelve months.
 
 II. DISCUSSION
 A. Ineffective Assistance of Counsel
 
 13
 Morris first argues that she was denied her Sixth Amendment right to effective assistance of counsel because her attorney: (1) failed to seek a separate trial from the co-defendants; (2) failed to object to the prosecutor's leading questions; (3) failed to object to inflammatory and prejudicial evidence; (4) failed to request specific instructions; (5) failed to file a motion for judgment of acquittal within seven days of the verdict; (6) failed to apprise the court of mitigating matters not included in the presentence report; and (7) failed to file certain written objections to the presentence report.
 
 
 14
 Morris' claim of ineffective assistance of counsel is not properly before us. The claim was neither presented to nor addressed by the district court. Consequently there has been no opportunity to develop an adequate record with respect to any of the issues Morris now raises. If the claim of ineffective assistance of counsel is to be pursued, it should be raised in the district court in a motion made pursuant to 28 U.S.C. Sec. 2255 and not in a direct appeal. United States v. Petty, 1 F.3d 695, 696-97 (8th Cir.1993); United States v. Davis, 882 F.2d 1334, 1345 n. 14 (8th Cir.1989), cert. denied, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990); United States v. Gray, 464 F.2d 632, 634 n. 1 (8th Cir.1972).
 
 B. Severance
 
 15
 Morris next argues that the district court erred by failing to grant her a severance from Higgs or, alternatively, by failing to give a cautionary instruction limiting the jury's consideration of certain evidence to only the co-defendant against whom it was properly admitted. Morris, however, did not file a motion for severance and she made no request for a cautionary instruction. Because this issue was not presented to the trial court, we review it for plain error. See United States v. Munoz, 894 F.2d 292, 294 (8th Cir.1990).
 
 
 16
 Because Morris and Higgs were alleged to have participated in interrelated bank fraud and money laundering offenses, their joinder was proper under Fed.R.Crim.P. 8(b). However, even when joinder is appropriate on the face of the indictment the district court may grant a severance where it appears that joinder would prejudice a defendant. Fed.R.Crim.P. 14.
 
 
 17
 Upon review of the record, we conclude that none of the reasons asserted by Morris establish the type of prejudice warranting severance. The fact that Higgs gave testimony implicating Morris did not constitute grounds for severance, particularly in light of the corroborating evidence presented by other witnesses. One defendant's efforts to exonerate himself at the expense of another is not sufficient to require separate trials. United States v. Jones, 880 F.2d 55, 63 (8th Cir.1989); United States v. Boyd, 610 F.2d 521, 526 (8th Cir.1979), cert. denied, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980). Further, contrary to Morris' assertion, evidence that Higgs made a false statement to the Bank of Roland in furtherance of the scheme to defraud alleged in Count Two was not inadmissible as to her since the two defendants were charged with aiding and abetting each other. The admission of this evidence was neither prejudicial nor did it warrant the giving of a cautionary instruction. On the whole, we are satisfied that the district court's failure to sever the trials was not an abuse of discretion resulting in clear prejudice to Morris. See United States v. O'Meara, 895 F.2d 1216, 1219 (8th Cir.1990).
 
 C. Jury Instructions
 
 18
 Morris next claims error in the district court's failure to give a cautionary instruction with respect to the testimony of her accomplice, Higgs. However, Morris did not offer an accomplice testimony instruction at trial, and such an instruction is mandatory only when the accomplice testimony is uncorroborated. United States v. Schoenfeld, 867 F.2d 1059, 1061-62 (8th Cir.1989); United States v. Roberts, 848 F.2d 906, 908 (8th Cir.), cert. denied, 488 U.S. 931, 109 S.Ct. 322, 102 L.Ed.2d 340 (1988); United States v. Shriver, 838 F.2d 980, 983 (8th Cir.1988). Upon review of the record in this case, we find that Higgs' testimony was corroborated by that of other witnesses and by the testimony of Morris herself. Thus, no error resulted from the absence of an instruction relating to the testimony of the accomplice.
 
 
 19
 Morris also contends that the district court improperly instructed the jury with respect to Count Three of the indictment. At trial, the jury was instructed as follows:It is the Government's allegation and contention in Count 3 that the $200,000 loan from the First National Bank of Roland, Oklahoma constituted 'proceeds of a specified and unlawful activity'. That is, that said funds were obtained by the Defendants Virginia Morris and William T. Higgs through a bank fraud as alleged in Count Two.
 
 
 20
 It is the further contention of the Government that the moneys obtained by bank fraud from the First National Bank of Roland, Oklahoma were used to carry out the bank fraud alleged in Count One of the Indictment. Neither defendant can therefore be found guilty of Count Three unless at least one of them has been found guilty of Count Two and at least one of them has been--and at least one of the defendants has been found guilty of Count One.
 
 
 21
 Morris argues that the district court erred in instructing the jury that the money laundering offense in Count Three was committed with intent to promote the bank fraud (relating to Northwest National Bank) charged in Count One because the indictment alleged that the money laundering offense was committed with intent to promote the bank fraud (relating to First National Bank of Roland) charged in Count Two. Morris did not object to this instruction at trial. Failure to make a timely and specific objection to an instruction results in a waiver of the objection on appeal. United States v. Watson, 953 F.2d 406, 409 (8th Cir.1992); United States v. Young, 702 F.2d 133, 136 (8th Cir.1983); Fed.R.Crim.P. 30. Thus, we review Morris' claim for plain error. United States v. McKnight, 799 F.2d 443, 447 (8th Cir.1986).
 
 
 22
 The bank fraud scheme charged in Count One continued for several months after the August 1990 financial transaction alleged in Count Three. Evidence presented at trial revealed that Morris and Higgs used part of the Bank of Roland loan proceeds to close out the Midwest Trading account at Northwest National Bank and that they did so to conceal the overdraft status of the account from bank regulators who were scheduled to conduct an examination in August 1990. Even after the Midwest Trading account was closed, Higgs continued to draw insufficient funds checks against the account with Morris' approval. In light of the evidence, the transaction alleged in Count Three was done "with the intent to promote the carrying on" of the bank fraud scheme charged in Count One. See United States v. Johnson, 971 F.2d 562, 566 (10th Cir.1992); United States v. Montoya, 945 F.2d 1068, 1076 (9th Cir.1991). The district court did not err in instructing the jury accordingly.
 
 
 23
 D. Sufficiency of the Evidence and the Indictment
 
 
 24
 Morris and Higgs argue that the district court erred in denying their motions for directed verdict of acquittal on Count Three. When a challenge is made to the sufficiency of the evidence, we are required to view the evidence in the light most favorable to the verdict, giving the prosecution the benefit of all inferences reasonably to be drawn in its favor from the evidence. United States v. Penn, 974 F.2d 1026, 1028 (8th Cir.1992). As discussed above, the evidence supports the jury's finding that Morris and Higgs used the Bank of Roland loan proceeds to further and continue their bank fraud scheme against Northwest National Bank. Viewing the evidence in the light most favorable to the verdicts, the trial court properly denied the motions for directed verdict of acquittal as to Count Three.
 
 
 25
 Higgs further argues that Count Three should have been dismissed because it did not give him adequate notice of the alleged "specified unlawful activity." In particular, Higgs complains that because Count Three incorporated by reference the substantive allegations of Count Two, he was led to believe that the "specified unlawful activity" alleged in Count Three referred to the bank fraud in Count Two. Higgs asserts that it was not until the sixth day of trial that he learned that the "specified unlawful activity" alleged in Count Three referred to the bank fraud charged in Count One. A "challenge to the sufficiency of the indictment is a question of law that we review de novo." United States v. Zangger, 848 F.2d 923, 924-25 (8th Cir.1988) (citing United States v. Givens, 767 F.2d 574, 584 (9th Cir.), cert. denied, 474 U.S. 953, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985)). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); see also United States v. Mallen, 843 F.2d 1096, 1102 (8th Cir.), cert. denied, 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988); Fed.R.Crim.P. 7(c)(1). An indictment normally will be deemed sufficient "unless no reasonable construction can be said to charge the offense." United States v. Peterson, 867 F.2d 1110, 1114 (8th Cir.1989).
 
 
 26
 Applying the foregoing principles to the indictment in this case, we conclude that Count Three is legally sufficient. The allegations of Count Three clearly state that Bank of Roland loan proceeds were ultimately deposited into the Midwest Trading Company account at Northwest National Bank with the intent to promote the continued bank fraud being perpetrated by Higgs and Morris against Northwest National Bank. When Count Three is read in conjunction with the preceding counts it is apparent that the specified unlawful activity refers to the fraudulent scheme alleged in Count One. Therefore, Count Three should not have been dismissed.
 
 E. Sentencing
 
 27
 The district court, adopting the presentence report, found that Morris had abused a position of trust and, therefore, increased her offense level pursuant to U.S.S.G. Sec. 3B1.3. In relevant part, Sec. 3B1.3 permits a two-level increase of the offense level "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense...." A chief officer of a bank is in a position of trust, and when such an officer uses her position to facilitate the commission of a crime, it is proper to increase the offense level pursuant to Sec. 3B1.3. United States v. McElroy, 910 F.2d 1016, 1027 (2d Cir.1990). See United States v. Brelsford, 982 F.2d 269, 271 (8th Cir.1992) (a bank teller supervisor was subject to the offense level increase pursuant to Sec. 3B1.3).
 
 
 28
 At the time the offenses were committed Morris was chief executive officer and chairman of the board of directors of Northwest National Bank. As an officer and director, she occupied a position of trust at Northwest National Bank, and she used that position to commit the offenses charged in the indictment as well as to conceal her criminal conduct. Morris approved the payment of the insufficient funds checks drawn on the Midwest Trading account and, by reason of her position as chief officer, she was able to approve payment of these checks orally. Further, Morris used her position to keep the overdraft status of the account concealed from the board of directors by instructing her subordinates not to "close out" their work for the day until a deposit could be made to cure the overdraft.
 
 
 29
 Morris' contention that the offenses charged in Counts Two and Five through Seven could have been accomplished by other employees with loan approval is irrelevant. "An employer ... may place many employees in positions of trust.... The relevant inquiry under the guidelines is whether trust is inherent to the nature of the position." Brelsford, 982 F.2d at 272 (citations omitted). In any event, however, the evidence at trial established that Morris was the only person at Northwest National Bank who could have committed the fraud to such an extent. Accordingly, we conclude that the district court did not abuse its discretion by increasing Morris' offense level pursuant to Sec. 3B1.3.
 
 
 30
 The government argues, and we agree, that the evidence warranted the assessment of an additional two-level increase pursuant to U.S.S.G. Sec. 3B1.1(c) based on Morris' role as an organizer and leader. According to Application Note 3 of the Commentary to Sec. 3B1.1(c):
 
 
 31
 In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as 'kingpin' or 'boss' are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.
 
 
 32
 Section 3B1.1 employs a broad definition of what constitutes an "organizer or leader." United States v. Blumberg, 961 F.2d 787, 791 (8th Cir.1992) (citing United States v. Manuel, 912 F.2d 204, 207 (8th Cir.1990)); United States v. Harry, 960 F.2d 51, 54 (8th Cir.1992). A defendant need not directly control others in the organization to have functioned as an organizer. See Blumberg, 961 F.2d at 791. In the instant case, however, the evidence established that Morris did exercise direct control over the operations of Northwest National Bank, causing subordinate employees to perform acts designed to perpetuate and conceal her fraudulent activities. The evidence also established that Morris recruited Higgs to write insufficient fund checks and directed him in the opening and maintenance of an overdrawn account in a bank that she controlled. See United States v. Pedroli, 979 F.2d 116, 118 (8th Cir.1992) (where defendant recruited another to commit a bank robbery and provided a disguise and demand note, a two-level increase under Sec. 3B1.1(c) was proper). We believe that the district court's determination that Morris was not an organizer or leader for purposes of Sec. 3B1.1(c) was clearly erroneous.
 
 
 33
 The government next argues that the district court erred in not sentencing Morris and Higgs pursuant to U.S.S.G. Sec. 2S1.1, the guideline provision that applies to the offense of money laundering. The district court rejected Sec. 2S1.1 and departed downward based, in part, on its determination that the defendants' use of the fraudulently-obtained Bank of Roland loan proceeds to close out the Midwest Trading account had the effect of concluding, and was not done to further, the scheme to defraud Northwest National Bank. As discussed above, we believe that the evidence was sufficient to support the jury's determination that the financial transaction alleged in Count Three was intended to promote the carrying on of the Northwest National Bank fraud. The closing of the Midwest Trading account in August 1990 enabled the defendants not only to conceal their fraudulent activities but to continue them beyond that date into January 1991. See United States v. Montoya, 945 F.2d 1068, 1076 (9th Cir.1991) (defendant's deposit of bribery proceeds into his bank account was a transaction intended to promote the carrying on of a specified unlawful activity under 18 U.S.C. Sec. 1956(a)(1)(A)(i), as deposit allowed defendant to carry out the bribery by characterizing proceeds as legitimate funds).
 
 
 34
 The district court also determined that the money laundering offense was the same as the bank fraud offenses and that neither Congress nor the Sentencing Commission intended the former to be punished more severely than the latter as contemplated by Sec. 2S1.1. In interpreting the application of 18 U.S.C. Sec. 1956 to other illegal conduct, courts have held that it applies to the prosecution of financial transactions arising from the specified unlawful activities designated in the statute. See United States v. Skinner, 946 F.2d 176, 178 (2nd Cir.1991) (the language of 18 U.S.C. Sec. 1956(a)(1)(A)(i) "... in conjunction with the definitions provided in 18 U.S.C. Sec. 1956(c) (1988), demonstrate that Congress intended to make unlawful a broad array of transactions designed to facilitate numerous federal crimes...."). In enacting 18 U.S.C. Sec. 1956(d), Congress intended cumulative punishment for the specified unlawful activities and the money laundering violations. United States v. Lee, 937 F.2d 1388, 1397 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 977, 117 L.Ed.2d 141 (1992). Thus, the district court erred in not sentencing Morris and Higgs pursuant to Sec. 2S1.1 on the money laundering conviction.
 
 
 35
 Finally, the United States and Morris separately challenge the district court's calculation of "loss" under the Sentencing Guidelines. At the sentencing hearing the government argued that the total loss attributable to Morris with respect to the bank fraud and false entries convictions was $826,000. Included in this figure was $156,000, representing the sum of the five insufficient funds checks referred to in Count Four. Evidence presented at trial revealed that the $156,000 was repaid at Morris' request by a Northwest National Bank employee, Dolores Lankford, in order to conceal the overdrafts from bank regulators. Because the repayment was made prior to any discovery of the overdrafts, the district court excluded the $156,000 from the loss computation under U.S.S.G. Sec. 2F1.1.
 
 
 36
 We review a district court's finding regarding loss under Sec. 2F1.1 under the clearly erroneous standard. United States v. Earles, 955 F.2d 1175, 1180 (8th Cir.1992). Section 2F1.1 of the guidelines provides that the base offense level for an offense level is either the actual loss resulting from the fraudulent conduct or the amount of loss the defendant intended to inflict, whichever is greater. United States v. Edgar, 971 F.2d 89, 93 (8th Cir.1992). "The focus for sentencing purposes under Sec. 2F1.1 should be on the amount of possible loss the defendant attempted to inflict on the victim." United States v. Prendergast, 979 F.2d 1289, 1292 (8th Cir.1992) (citations omitted). Thus, we have held that the loss calculation under Sec. 2F1.1 does not hinge upon "actual loss" or "net loss." Id. at 1291; United States v. Saunders, 957 F.2d 1488, 1494 (8th Cir.1992); United States v. Johnson, 908 F.2d 396, 398 (8th Cir.1990).
 
 
 37
 The district court based its decision to exclude $156,000 from the loss computation on the following portion of Application Note 7(b) of the Commentary to Sec. 2F1.1:
 
 
 38
 In fraudulent loan application cases and contract procurement cases, the loss is the actual loss to the victim (or if the loss has not yet come about, the expected loss). For example, if a defendant fraudulently obtains a loan by misrepresenting the value of his assets, the loss is the amount of the loan not repaid at the time the offense is discovered, ... (emphasis added)
 
 
 39
 The remainder of Application Note 7(b) reads as follows:
 
 
 40
 reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan. However, where the intended loss is greater than the actual loss, the intended loss is to be used. (emphasis added).
 
 
 41
 We believe that the district court's exclusion of the $156,000 from the loss calculation resulted from an erroneous interpretation of Sec. 2F1.1 and our prior decisions. Accordingly, at resentencing this amount should be included in calculating the total loss attributable to Morris' fraudulent conduct.
 
 
 42
 Morris' challenges to the loss computation are directed to the district court's failure to consider the value of real property that had been mortgaged to secure the loans referred to in Counts Five and Six and the court's failure to adduce evidence to establish the amount of the loss sustained by Northwest National Bank. We find no merit to either challenge. Morris' offense level did not turn on whether Northwest National Bank recovered or could have recovered its potential loan losses by foreclosing on the pledged security. See Johnson, 908 F.2d at 398. Further, as the district court had the benefit of the evidence presented at trial that established the amount of Northwest's loss, it was unnecessary to present further evidence on the issue at sentencing.
 
 III. CONCLUSION
 
 43
 We affirm the convictions of Morris and Higgs. However, we vacate their sentences and remand the case to the district court for resentencing in accordance with this opinion.
 
 
 
 *
 The HONORABLE CAROL E. JACKSON, United States District Judge for the Eastern District of Missouri, sitting by designation