**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David R. ANDERSON, Defendant–**
**Appellant.**

**No. 94–3561.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1995.

Decided Oct. 6, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied Nov. 21, 1995.

Lawrence F. Scalise, Des Moines, Iowa, argued (Alan G. Stolor, Omaha, Nebraska, on the brief), for appellant.

Steven A. Russell, Lincoln, Nebraska, argued (Thomas J. Monaghan, United States Attorney, Omaha, Nebraska, on the brief), for appellee.

Before MAGILL and HANSEN, Circuit Judges, and GOLDBERG,[*] Judge.

HANSEN, Circuit Judge.

David R. Anderson appeals the sentence that the district court[1] imposed after he pleaded guilty to one count of bankruptcy fraud. Anderson contends that the district court erred in determining his offense level under the Sentencing Guidelines by miscalculating the amount of loss he intended from his fraud, by adjusting his offense level upward for obstruction of justice, and by failing to grant a two-level reduction for acceptance of responsibility. We affirm.

## I. Background.

David R. Anderson, once a successful businessman, found himself in financial straits in the late 1980's. Before that time, he had successfully owned a company involved in the sale of pacemakers and other medical devices. Anderson also held various investments in real estate, horses, and stocks, for which he had often borrowed and repaid money from several financial institutions. In September 1987, his creditors filed an involuntary bankruptcy petition against him. In July 1988, after the bankruptcy judge denied his motion to dismiss the involuntary petition, Anderson filed a voluntary petition for bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code.

In the bankruptcy proceedings, Anderson estimated $1,376,559 in liabilities and asserted defenses against some creditors' claims. Ultimately, Anderson and his creditors reached settlement agreements for substantially lower amounts than the debts his creditors claimed. The bankruptcy judge approved the settlements and dismissed the bankruptcy proceedings.

The government later discovered that Anderson had owned some rather substantial assets at the time he filed his voluntary bankruptcy petition—the existence, value, or transfer of which he had failed to disclose to the bankruptcy court or his creditors. The undisclosed assets and/or transfers were as follows:

1. Ownership, valuation, or transfer of a substantial amount of stock in Woodstream Corporation, Arrhythmia Research Technology, Inc., and Ameritrade, Inc.

2. Ownership of an Indianapolis race car worth $115,000 and an engine worth $45,000.

3. Ownership of a 1981 Ferrari valued at $85,000, and his transfer of that automobile to his son.

4. Settlement in excess of $1.9 million of a personal claim that Anderson had filed in Texas against Intermedics Corporation and others, which Anderson immediately placed into an account for his son.

5. Firearms believed to be valued at $50,000, later sold to Anderson's son for $18,500.

*See* Presentence Investigation Report at 4–6. The value of these concealed assets far exceeds the nearly $1.4 million in liabilities that Anderson listed in his voluntary bankruptcy petition. The district court found that Anderson's creditors would not have settled their claims in the same manner had they known the true extent of his assets.

The government subsequently charged Anderson with six counts of bankruptcy

---

[*] The HONORABLE RICHARD W. GOLDBERG, Judge, United States Court of International Trade, sitting by designation.

1. The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska.

fraud for concealing the above-listed assets and transfers of those assets, *see* 18 U.S.C. § 152; and one count of money laundering for conducting financial transactions involving the proceeds of bankruptcy fraud in order to conceal the nature, location, source, ownership or control of the proceeds, *see* 18 U.S.C. § 1956(a)(1)(B)(i). Anderson agreed to plead guilty to count IV, which charged him with fraudulently transferring property of the bankruptcy estate by selling 900 shares of Woodstream Corporation valued at $15,408 with intent to defeat the bankruptcy law. In exchange, the government agreed to dismiss the remaining counts of the indictment at the time of sentencing.

While preparing the presentence report, a United States Probation Officer requested a personal financial statement from Anderson. In response, Anderson submitted an incomplete and unsigned statement with a note authorizing his accountant to provide any financial information requested by the probation office. The probation office then contacted the accountant for information concerning the disposition of certain assets Anderson had listed on a prior financial statement that he provided to First National Bank of Omaha in October 1986 and which were not accounted for on the present financial statement. Anderson referred the probation office to his accountant and attorney, but neither they nor Anderson ever fully provided the requested information.

At sentencing, Anderson disputed the amount of intended loss attributable to his crime and to his related conduct. He admitted that he wrongfully concealed the Woodstream stock transaction listed in the count to which he pleaded guilty. Nevertheless, Anderson maintained that he intended no loss to his creditors but merely settled the claims for what they were worth.

Following a two-day evidentiary hearing, the district court made tentative written findings, later adopted as permanent findings, concerning the intended loss and the actual loss caused by Anderson's fraud. The district court found that Anderson intended a loss of approximately $340,000 (the amount by which he benefitted after subtracting from his liabilities the property he revealed and the settlements he actually made), and that Anderson caused an actual loss of $244,971 (which represents claims that either were not paid or were settled for less than their probable value due to Anderson's failure to disclose the full extent of his assets). In accordance with the Sentencing Guidelines, the district court used the greater of the two amounts ($340,000) as the estimated loss for purposes of determining Anderson's base offense level at sentencing. *See* United States Sentencing Commission, *Guidelines Manual*, § 2F1.1 comment. (n. 7) (Nov.1987).[2]

Because the offense involved more than minimal planning and a scheme to defraud more than one victim, the district court added a two-level upward adjustment to Anderson's base offense level. *See* U.S.S.G. § 2F1.1(b)(2)(A) and (B). The court also added a two-level upward adjustment for obstruction of justice based upon Anderson's evasive conduct of intentionally failing to provide the probation officer with requested information. *See* U.S.S.G. § 3C1.1 (Nov.1993). Anderson requested but did not receive a two-level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1 (Nov.1993).

The district court sentenced Anderson to 27 months of imprisonment to be followed by a term of 3 years of supervised release and ordered restitution in the amount of $244,971. Anderson appeals the calculation of his sentence.

## II. Discussion.

Anderson first contends that the district court erred in defining and calculating the amount of loss attributable to his conduct. We review the district court's calculation of the amount of loss for purposes of U.S.S.G. § 2F1.1 under the clearly erroneous standard. *United States v. Morris*, 18 F.3d 562, 570 (8th Cir.1994). We review de novo the district court's interpretation of the

---

**2.** The Guidelines in effect at the time of sentencing (the 1993 Guidelines here) generally control sentencing issues. *United States v. Cassidy*, 6 F.3d 554, 556 (8th Cir.1993). In this case, however, for the bankruptcy fraud valuation issue we use the Guidelines in effect at the time of the offense in order to avoid an ex post facto concern, as did the district court. *See id.*

Guidelines. *United States v. Willis*, 997 F.2d 407, 417 (8th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 704, 126 L.Ed.2d 670 (1994).

■ "In fraud cases, the Sentencing Guidelines provide for a graduated increase in the base offense level dependent on the amount of the loss." *United States v. Ballew,* 40 F.3d 936, 943 (8th Cir.1994) (citing U.S.S.G. § 2F1.1 (Nov.1987)), *cert. denied,* — U.S. ——, 115 S.Ct. 1813, 131 L.Ed.2d 737 (1995). To calculate the amount of loss attributable to bankruptcy fraud, the Guidelines commentary explains that the district court should use the "probable or intended loss that the defendant was attempting to inflict," if it is larger than the actual loss. U.S.S.G. § 2F1.1, comment. (n. 7) (Nov.1987); *see United States v. Edgar,* 971 F.2d 89, 93 (8th Cir.1992). The district court need not determine a precise calculation of the amount of loss, "[t]he court need only make a reasonable estimate of the range of loss, given the available information." U.S.S.G. § 2F1.1, comment. (n. 8) (Nov.1987); *see also Edgar,* 971 F.2d at 96. The focus of section 2F1.1 "should be on the amount of possible loss the defendant attempted to inflict on the victim." *United States v. Prendergast,* 979 F.2d 1289, 1292 (8th Cir.1992).

■ In this case, the district court determined that the intended loss Anderson attempted to inflict was larger than the actual loss. The court calculated intended loss by subtracting from Anderson's estimated total liabilities ($1,376,559) the sum of the assets that Anderson listed in bankruptcy ($446,500) and the settlements Anderson actually made ($590,000). From this calculation, the district court found that Anderson intended a loss of approximately $340,000.

The district court determined that the actual loss was $244,971, which represents claims that either were not paid or were settled for less than their probable value due to Anderson's failure to disclose the full extent of his assets. The district court used the greater of the two calculations (intended loss of $340,000) as the estimated loss for purposes of determining Anderson's base offense level under U.S.S.G. § 2F1.1.

Anderson argues that the district court did not make a reasonable estimate of intended loss because he intended no loss to his creditors. Anderson contends that the district court erred by failing to deduct the payments that he intended his creditors to receive in calculating intended loss and by defining intended loss as potential loss.

■ We note initially that the district court was not bound to accept Anderson's self-serving assertions at sentencing that he intended no loss to his creditors. Determining intent for purposes of § 2F1.1 is a question of fact within the province of the sentencing judge, which we review for clear error. *See Edgar,* 971 F.2d at 96. "It is the duty of the district court to weigh the evidence and to base its decision on the preponderance of the evidence." *Cassidy,* 6 F.3d at 557. Credibility determinations are an important part of this weighing process, and "a district court's findings as to the credibility of a witness are 'virtually unreviewable on appeal.'" *United States v. Adipietro,* 983 F.2d 1468, 1479 (8th Cir.1993) (quoting *United States v. Candie,* 974 F.2d 61, 64 (8th Cir.1992)).

Furthermore, in defining and calculating the intended loss, the district court was very careful to link that calculation to Anderson's intent. The district court found that the assets Anderson concealed totalled an amount well in excess of the $1,376,559 in claims against him, and the property that he voluntarily disclosed in the bankruptcy proceedings totalled only about $446,500. The district court noted that the difference between Anderson's listed liabilities in bankruptcy and the property he did disclose made the maximum potential loss here ($930,059). However, because Anderson actually made settlements totalling $590,000 during the bankruptcy proceedings, the court determined that Anderson did not intend the maximum possible loss.[3] Instead, the district

---

3. The district court stated as follows:
I am aware of language in *United States v. Johnson,* 908 F.2d 396, 398 (8th Cir.1990) and *United States v. Saunders,* 957 F.2d 1488, 1494 (8th Cir.1992) that "the focus for sentencing purposes should be on the amount of the possible loss which [the defendant] attempted to inflict ... [.]" That language may mean that

court found that Anderson sought to reap whatever benefit he could obtain for himself by settling claims without revealing the full extent of his assets to all his creditors. Thus, the district court measured intended loss as the difference between the maximum potential loss based on the undisclosed assets and the amount Anderson actually repaid in settlements to creditors who did not know the true extent of his assets.

We see no error in the district court's calculation of intended loss. *See Kok v. United States,* 17 F.3d 247, 250 (8th Cir.1994) (holding measure of intended loss was the difference between the amount of credit the bank extended based on the false representation and the amount it would have extended had it known the debtor's true financial condition). The district court did not look to the maximum potential loss from the situation to the exclusion of Anderson's intent but very properly considered the amount of potential loss that Anderson intended to inflict, as evidenced by his conduct of settling claims without revealing the true extent of his assets. We conclude that the district court did not misinterpret the Guidelines and that the district court's calculation of the amount of loss for purposes of U.S.S.G. § 2F1.1 was not clearly erroneous. In fact, it is well within the range of reasonable estimate, is based upon the record made at an extensive sentencing hearing, and was clearly explained in writing.

■ Anderson's second argument on appeal challenges the district court's decision to impose an upward adjustment for obstruction of justice pursuant to U.S.S.G. § 3C1.1 (Nov. 1993). The government bears the burden of proving the facts necessary to support this enhancement. *United States v. Ransom,* 990 F.2d 1011, 1013 (8th Cir.1993). Applying the clearly erroneous standard of review, *see United States v. Dyer,* 910 F.2d 530, 533 (8th Cir.), *cert. denied,* 498 U.S. 907, 111 S.Ct. 276, 112 L.Ed.2d 232 and 498 U.S. 949, 111 S.Ct. 366, 112 L.Ed.2d 329 (1990), we give "great deference to the sentencing judge" when reviewing the decision to impose an enhancement for obstruction of justice. *Ransom,* 990 F.2d at 1013 (internal quotations and citations omitted).

■ Section 3C1.1 provides for a two-level increase to a defendant's base offense level for willfully obstructing or impeding justice during the investigation, prosecution, or sentencing of the offense. Providing materially false information to a probation officer in the course of a presentence investigation for the court constitutes willful obstruction of justice. *See* U.S.S.G. § 3C1.1 comment. (n. 3(h)); *Neary v. United States,* 998 F.2d 563, 566 (8th Cir.1993). On the other hand, merely "providing incomplete or misleading information, not amounting to a material falsehood" to a probation officer does not support an enhancement for obstruction of justice. U.S.S.G. § 3C1.1 comment. (n. 4(c)).

■ The district court assessed a two-level enhancement for obstruction of justice, specifically finding that Anderson, in a continuing effort to conceal assets from creditors, intentionally failed to provide financial information that a United States Probation Officer expressly requested during the presentence investigation. The probation officer first requested that Anderson submit a financial statement. Anderson submitted an incomplete and unsigned statement with a note authorizing his accountant to provide the probation office with any additional financial information. The probation officer then requested information from the accountant concerning the disposition of assets listed in Anderson's October 1986 "Personal Financial Statement," which listed total assets of $6,078,511. (Anderson's voluntary petition for bankruptcy filed in July 1988 showed assets of only $446,500, and his unsigned financial statement of April 1994 listed no major assets except two life insurance policies.) The accountant was unable to provide

---

the intended loss here is $930,058.91, but I do not take it to mean that where the evidence enables—even though hazily—the district court to make a determination of the defendant's actual intent, the court must nevertheless take the top possible figure as the intended loss.

After all, it is the "intended loss" that must be used. U.S.S.G. § 2F1.1, note 7 (1988). I find that the loss intended by Anderson was approximately $340,000.00.
(Appellant's Addend. at 4.)

any information because he could not comment on the ownership of assets that originally might have been owned by Anderson but were owned by Anderson's wife or son at the time of the inquiry. In July 1994, Anderson submitted a second, signed, and more detailed financial statement, but this again failed to answer the probation officer's questions.

Anderson's attorney attempted to explain in a letter that the October 1986 "Personal Financial Statement" was really a family financial statement, that some of the assets were owned by his son and his wife, and that Anderson had overestimated the value of some assets on the 1986 statement. While the district court found this letter to be somewhat helpful, the court concluded that Anderson attempted to hinder the presentence investigation by intentionally failing to provide the requested information, providing highly incomplete information, and referring the probation officer to persons who could not provide information when he could have provided the information himself.

Anderson argues that his conduct did not amount to obstruction of justice because he stated no material falsehoods, but merely failed to provide complete information. We disagree. The financial information requested was material to the presentence investigation for purposes of determining Anderson's ability to pay fines or restitution. It also contained falsehoods. Anderson's first financial statement to the probation office, in April 1994, says that his consulting work is paying his personal expenses, yet for net salary he lists "none." Anderson's second financial statement to the probation office, in July 1994, lists $5,000 in accounts receivable for weapons sold to his son but conceals the disposition of the $13,500 that he already collected. The basic disposition of these and other assets was requested and would have been within Anderson's knowledge, yet he did not answer forthrightly. While feigning

cooperation he was again attempting to minimize and conceal his assets. This intentional conduct rises above merely providing incomplete information.[4] Our review of the record convinces us that the district court did not clearly err in assessing a two-level enhancement for obstruction of justice.

Anderson's final contention is that the district court erred by failing to grant him a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. This section provides for a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense...." U.S.S.G. § 3E1.1(a) (Nov.1993). However, the commentary expressly provides that this reduction is not warranted where a defendant is assessed an enhancement for obstruction of justice pursuant to § 3C1.1, except in "extraordinary cases." U.S.S.G. § 3E1.1, comment. (n. 4). We do not consider this to be an extraordinary case within the meaning of the commentary. Therefore, in light of our determination that the district court did not clearly err by assessing a two-level enhancement for obstruction of justice, we conclude that the district court did not err by refusing to grant a reduction for acceptance of responsibility.

### III. Conclusion.

Accordingly, we affirm the judgment of the district court.

---

4. Anderson cites two recent cases to support the proposition that failure to provide information to a probation officer does not constitute obstruction of justice. *See United States v. Pelliere,* 57 F.3d 936, 939 (10th Cir.1995) (refusal to admit guilt or provide information to probation officer); *United States v. Stites,* 56 F.3d 1020, 1026 (9th Cir.) (failure to provide financial data to probation officer), *amended by* 1995 WL 457271 (May 26, 1995). We have determined that these cases are readily distinguishable from this case because Anderson's conduct was not a mere denial of guilt or a refusal to provide information. Instead, Anderson, while purporting to cooperate, was in reality providing false financial data in an attempt to conceal assets.