**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellant,</u>

v.                                                                          No. 95-5964

JOHN THOMAS GILLESPIE,
<u>Defendant-Appellee.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellant,</u>

v.                                                                          No. 95-5965

WILLIAM HEALY HINES,
<u>Defendant-Appellee.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(CR-95-178-A)

Argued: July 11, 1997

Decided: August 25, 1997

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Higgins McQuillan, Assistant United States
Attorney, Alexandria, Virginia, for Appellant. Cheryl Ann Maier,

KING, PAGANO & HARRISON, Washington, D.C., for Appellee Gillespie; Seymour Glanzer, DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, L.L.P., Washington, D.C., for Appellee Hines. **ON BRIEF:** Helen F. Fahey, United States Attorney, Alexandria, Virginia, for Appellant. Steven Schaars, KING, PAGANO & HARRISON, Washington, D.C., for Appellee Gillespie. David B. Killalea, DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, L.L.P., Washington, D.C., for Appellee Hines.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

John Gillespie and William Hines worked as supervisors in a freight forwarding company, Daniel F. Young, Inc. (DFY), that engaged in a fraudulent billing scheme involving a Department of Defense foreign aid program, the Foreign Military Sales Financing Program. See 22 U.S.C.A. §§ 2763-2764 (West 1990 & Supp. 1997). DFY transferred Department of Defense payments to Multi-Modal Freight Systems, Inc., a company operated by a third co-conspirator, Sylvan Friedman, who would distribute to Gillespie and Hines their shares of the fraudulent gains. At first, Friedman directly forwarded the defendants' shares to them in cash or paid personal bills on their behalf. When this arrangement grew burdensome, the parties decided to route their illegal profits through a German bank instead. Within ten months, $715,000 of fraudulently-obtained funds flowed through this German account. Gillespie and Hines became unhappy with the delays involved with this method, so Friedman then began cycling the payments through a domestic shell corporation he controlled. The total government loss from the fraud scheme exceeded $2.5 million.

After an investigation, the Government charged Gillespie and Hines with twenty-eight counts of money laundering in violation of

2

18 U.S.C.A. § 1956(a)(2)(A) (West Supp. 1997), ten counts of submitting false claims in violation of 18 U.S.C.A.§ 287 (West Supp. 1997), and one count of conspiracy to defraud the Government, to engage in wire fraud and money laundering (based on the transactions with the German bank), and to submit false claims in violation of 18 U.S.C.A. § 371 (West 1966 & Supp. 1997). The jury convicted both Gillespie and Hines of the conspiracy count; however, it acquitted Hines of all substantive counts and Gillespie of all but six false claims counts.

At sentencing, the district court properly looked to the multiple count rules and determined to "go from" U.S.S.G. § 2X1.1 (conspiracy) to U.S.S.G. § 2S1.1 (money laundering-- the most heavily punished object of the conspiracy). See U.S. Sentencing Guidelines Manual § 3D1.1-.3 (1994). Section 2S1.1 provides for a base level of "23, if convicted under 18 U.S.C. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A)" and a base level of "20, otherwise." See 18 U.S.C.A. § 1956 (West Supp. 1997). Gillespie and Hines argued (and the probation officer concluded) that because they were convicted under the conspiracy statute, 18 U.S.C.A. § 371, not"under 18 U.S.C.A. § 1956(a)(1)(A), (a)(2)(A), or (a)(3)(A)," the base level should be 20. The district court rejected that argument because the object of the defendants' conspiracy had been to launder money in violation of § 1956(a)(2)(A); thus, he considered the proper base level to be 23, pursuant to § 2S1.1(a)(1).

Then, over the defendants' objections, the district court: (1) increased each defendant's base level by four levels pursuant to § 2S1.1(b)(2)(E), accepting the Government's contention that the total value of the laundered funds, $750,000, should be attributed to each man; and (2) refused to decrease the defendants' base levels by three levels pursuant to § 2X1.1(b)(2), rejecting their argument that they did not perform all acts they believed necessary for completion of the substantive offenses. Thus, the district court calculated the total offense level for each defendant to be 27. Because neither Gillespie nor Hines had any criminal record, their presumptive sentencing range was 70 to 87 months imprisonment. See U.S.S.G. Ch.5, Pt.A (Sentencing Table).

3

Over the Government's objection, the district court granted both Gillespie and Hines a six-level downward departure from this presumptive sentencing range, reasoning:

> The Court understands the heartland argument to be that the guidelines ranges are established on the basis of a range of cases under a particular statute that give you an average range for sentence. The idea under the guidelines is to avoid disparities.
>
> The typical 1956 cases this Court has seen and sentenced people under, both before, when I sentenced people without guidelines, and subsequent to the guidelines, were all of a very different nature from this. They were very different cases from this, the vast majority of them covering narcotics, supported narcotics and the like.
>
> The sentences that I would have imposed and that I have seen imposed for those types of crimes are significantly more severe than those that might be imposed in connection with this case. Indeed, it's a factor of two or more. And the Court simply believes that this is not a heartland type of case for money laundering.

This six-level departure resulted in a guideline range of 37 to 46 months, which was the same sentencing range that would have resulted if the court had sentenced the defendants using the fraud guideline, U.S.S.G. § 2F1.1, rather than the money laundering guideline, § 2S1.1.[1]

Only the Government appeals. It offers a number of arguments as to why the sentences were improper. At the crux of most of these arguments is the claim that, notwithstanding the district court's statements that it was "go[ing] from" the money laundering guideline and "departing" downward six levels from that guideline, what the court actually did was sentence Gillespie and Hines using the fraud guide-

_____

[1] The court sentenced each man to 40 months in prison and two years of supervised release, and ordered each to pay restitution in the amount of $75,000.

4

line, as if money laundering had not been an object of the conspiracy at all.

The record provides some support for this claim. After adjusting the total offense level to 27, the district court turned to the "issue of the departure." The following colloquy then occurred:

> [COUNSEL FOR HINES]: Your Honor, we respectfully urge the Court to look at a number of mitigating circumstances here in regard to a downward departure.
>
> Your Honor correctly summarized the heartland, quote, unquote, violation argument. It is clear that the object of this conspiracy, the 1956, is not a heartland violation, and it is clear from the indictment that it isn't, and it is clear from the trial of the case it wasn't. It was simply a classic, forward [sic] case.
>
> THE COURT: It is strictly a what?
>
> [COUNSEL FOR HINES]: A fraud case , an overbilling, overcharging case; fraudulent overbilling is what the prosecution said it was. They said in their opening statement and they said during the trial, and it is such.
>
> Now, the fact that they would, in effect, couch this in the language of 1956 and dress it up that way, should not, therefore, result in an unnecessarily harsh sentence flowing therefrom, simply because they took that step to utilize the statute that really was designed for an entirely different purpose.
>
> THE COURT: And you point out that purpose was really drug trafficking --
>
> [COUNSEL FOR HINES]: Yes, sir.
>
> THE COURT: -- and assisting drug trafficking.
>
> [COUNSEL FOR HINES]: Drug trafficking and organized crime.

5

And this was not, this is not -- this is a normal fraud case. It is not an abnormal fraud case, or it's--

THE COURT: Garden variety.

[COUNSEL FOR HINES]: Pardon me?

THE COURT: Garden variety.

[COUNSEL FOR HINES]: I wouldn't say garden variety, but it's a normal fraud case, having --

THE COURT: Well, what would the guidelines be if they had just been charged with conspiracy to defraud and they had be [sic] convicted?

[COUNSEL FOR HINES]: I have --

THE COURT: I'm sure you've done that calculation. I recall some weeks ago doing it myself.

[COUNSEL FOR HINES]: I think it came out to about 21.

THE COURT: I think -- yes, I thought it was-- is the probation officer present in the courtroom?

[COUNSEL FOR HINES]: Yes.

THE PROBATION OFFICER: That's correct, your Honor.

THE COURT: Twenty-one?

THE PROBATION OFFICER: Yes, sir.

THE COURT: In fact, I think I inquired of that of you.

THE PROBATION OFFICER: Yes, sir.

6

THE COURT: All right, 21.

[COUNSEL FOR HINES]: And so --

THE COURT: <u>Instead of what, Mr. Glanzer</u>?

[COUNSEL FOR HINES]: <u>Well, we are up now to, we are up to 27 now</u>.

THE COURT: All right. <u>So it would be 21, and criminal history today Category 1</u>. All right, go ahead.

[COUNSEL FOR HINES]: And with regard to that issue, I don't have anything more to say, because it is clear from the evidence in the case what the case was about, and that's what it was.

. . . .

[COUNSEL FOR GILLESPIE]: Your Honor heard the evidence. Your Honor well knows the law. You have heard the heartland argument at least four times in this case. The guidelines recognize that for non-heartland cases, a departure downward may be appropriate. That's what we seek today.

<u>Without that departure, just glancing at the chart, Mr. Gillespie's sentence could be as much as two times what would be appropriate for a fraud driven charge</u>, two times what he had offered in, I believe it was August or September of 1994, to plead guilty to.

The charging decision here should not solely drive this Court's sentence. We urge you to take a look at <u>what really occurred, whether the Court characterizes it as garden variety fraud or straightforward fraud, this case has all the hallmarks of a fraud case</u>. That is all it ever could have been or should have been, and it is what Mr. Gillespie was willing to face up to months and months ago.

7

> The loss figures, which the Court is also well aware of, simply grossly overstate Mr. Gillespie's involvement in this matter, and we ask the Court, in the exercise of its discretion, to depart downward for Mr. Gillespie, to bring this case to a point recognizing the conduct actually involved and recognizing what he has been convicted of.

(emphasis added).

Thus, the defense supported the departure principally by arguing that the crimes at issue here involved "straightforward," "normal" fraud as opposed to money laundering.[2] Combined with the fact that the district court went to some pains to elicit from the defense counsel, and confirm with the probation officer, what the sentencing range would have been if the defendants "had just been charged with" and convicted of "conspiracy to defraud rather than money laundering," the record provides some basis for concluding that perhaps the district court did ultimately use the fraud guideline to sentence.

Such a procedure would clearly be in error. A defendant convicted of money laundering, in violation of § 1956, must be sentenced pursuant to the money laundering guideline, U.S.S.G. § 2S1.1, even if the conviction is based on economic rather than narcotics-related crimes. Section 1956 broadly criminalizes financial transactions with funds arising from a multitude of specified unlawful activities. <u>See</u> 18 U.S.C.A. § 1956(c)(7) (listing more than sixty federal crimes as triggering money laundering provisions). Thus, as the Eleventh Circuit recently explained:

> Congress intended to criminalize a broad array of money laundering activity, and included within this broad array is [transferring fraud profits between bank accounts]. Simply

_____

**2** Gillespie's counsel offered no other argument. The only other comments that Hines' counsel made in support of the departure were that the amount of laundered money attributed to Hines was overstated and that Hines had refused to plead guilty to money laundering as a matter of "principle." The district court did not appear to rely on either of these arguments, even telling the prosecutor it did not need to hear about the plea agreement.

8

> stated, [fraud-based] money laundering . . . is of the type
> considered by Congress and the Sentencing Commission.

United States v. Adams, 74 F.3d 1093, 1102 (11th Cir. 1996); see also United States v. Pierro, 32 F.3d 611, 619 (1st Cir. 1994) (rejecting defendant's argument that case fell outside money laundering heartland because it was "in essence . . . a garden-variety theft-of-property case"); United States v. Rose, 20 F.3d 367, 374-75 (9th Cir. 1994) (affirming refusal to depart because of disparity between fraud and money laundering guidelines); United States v. Morris, 18 F.3d 562, 569 (8th Cir. 1994) (reversing departure that lowered sentence for money laundering conviction to bank fraud range).

When sentencing for conspiracy, the Guidelines instruct the district court to look to the guideline "for the substantive offense." U.S.S.G. § 2X1.1(a). If defendants are convicted of conspiring to commit money laundering, that guideline must be U.S.S.G.§ 2S1.1.

Gillespie and Hines do not contend otherwise. Moreover, either implicitly (Gillespie) or explicitly (Hines at oral argument), they concede that a departure based solely on the fact that the laundered money was not linked to narcotics crimes would be erroneous. They instead assert that the district court did use the money laundering guideline and did properly depart from it for reasons other than the fact that their crimes were not drug related. This may be so.

The experienced district judge certainly gave careful consideration to the sentences at issue here. Apparently, this case impressed the court as fundamentally different from other money laundering cases it had previously seen. This general impression seemed to underlie its decision to depart. Unfortunately, the court did not articulate the basis for this general impression or enumerate what factors justified the departure -- other than the lack of a narcotics connection.

At the time of sentencing, the district court, of course, knew that a court must impose a sentence within the guideline range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A.

§ 3553(b) (West Supp. 1997). The district court did not, however, have the benefit of <u>Koon v. United States</u>, 116 S. Ct. 2035 (1996). There, the Supreme Court provided much needed guidance as to how courts are to determine whether a potential basis for departure has been "adequately taken into consideration by the Sentencing Commission."

The <u>Koon</u> Court "explained that when analyzing whether a potential basis for departure was adequately considered by the Commission in formulating the guidelines, a sentencing court must focus on whether the factor is taken into account by the guidelines, policy statements, or commentary and whether it is encompassed within the heartland of situations to which the applicable guideline was intended to apply." <u>United States v. Barber</u>, 1997 WL 386103, at *3 (4th Cir. July 14, 1997) (Nos. 95-5238, 95-5250) (citing <u>Koon</u>, 116 S. Ct. at 2044). "The Commission intend[ed] the sentencing courts to treat each guideline as carving out a `heartland,' a set of typical cases embodying the conduct that each guideline describes." <u>Koon</u>, 116 S. Ct. at 2044 (quoting U.S.S.G. Ch.1, Pt.A, intro. comment. 4(b) (1995)). Only factors that take a case outside the heartland for the applicable guideline can be considered as potential bases for departure. <u>See Barber</u>, 1997 WL 386103, at *3.

Guided by these principles, a court must first identify "[w]hat features of this case, potentially, take it outside the Guidelines' `heartland' and make of it a special or unusual case." <u>Koon</u>, 116 S. Ct. at 2045 (citing <u>United States v. Rivera</u>, 944 F.2d 942, 949 (1st Cir. 1993)). Then a court must determine if the special feature is forbidden, encouraged, discouraged, or unmentioned by the Guidelines. <u>Id.</u> If a factor is forbidden, e.g., race, sex, religion, socio-economic status, or drug dependency, <u>see</u> U.S.S.G. §§ 5H1.4, 5H1.10, a court may never rely on it as a basis for a departure. <u>Id.</u> at 2044, 2050. "All other factors, however, potentially may provide a basis for departure under appropriate circumstances." <u>Barber</u>, 1997 WL 386103, at *3.

If the Commission has indicated that a departure on the basis of a certain factor is encouraged, a district court is free to consider departure on that basis provided the applicable guideline has not already taken that factor into account. <u>Koon</u>, 116 S. Ct. at 2045. If the applicable guideline has already taken an encouraged factor into account, or

10

if departure for that factor is discouraged, or unmentioned, a district court can use it as a basis for a departure from the Guidelines range "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." Id. (emphasis added); see also United States v. Brock, 108 F.3d 31, 34-35 (4th Cir. 1997); United States v. Hairston, 96 F.3d 102, 105-06 (4th Cir. 1996), cert. denied, 117 S. Ct. 956 (1997). Moreover, "`in determining which sentence to choose,' a sentencing court must consider the statutory goals of sentencing set forth in 18 U.S.C.A. § 3553(a)(2) (West 1985)." Barber, 1997 WL 386103, at *4 (citing Koon, 116 U.S. at 2051).

Because the district court did not have the benefit of Koon or our cases interpreting it when it imposed the sentences at issue here, we vacate the sentences and remand for resentencing. On remand, the district court should apply the principles articulated in Koon and summarized above and make express factual findings as to all bases for any departure decision. See Brock, 108 F.3d at 35 n.2. Of course, the district court does not have authority to depart in such fashion as to completely nullify the jury finding that Gillespie and Hines were guilty of conspiracy to commit money laundering. See Adams, 74 F.3d at 1103.

VACATED AND REMANDED

11