**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                     No. 95-5238

ANTHONY D. BARBER,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                     No. 95-5250

DAVID L. HODGE, JR.,
Defendant-Appellant.

Appeals from the United States District Court
for the Eastern District of North Carolina, at Fayetteville.
Malcolm J. Howard, District Judge.
(CR-94-36)

Argued: March 4, 1997

Decided: July 14, 1997

Before WILKINSON, Chief Judge; RUSSELL, WIDENER, HALL,
MURNAGHAN, ERVIN, WILKINS, NIEMEYER, HAMILTON,
LUTTIG, WILLIAMS, MICHAEL, and MOTZ, Circuit Judges; and
PHILLIPS, Senior Circuit Judge, sitting en banc.

Vacated and remanded for resentencing by published opinion. Judge Wilkins wrote the majority opinion, in which Chief Judge Wilkinson and Judges Russell, Widener, Hall, Murnaghan, Ervin, Niemeyer, Hamilton, Luttig, Williams, Michael, Motz, and Phillips join. Judge Murnaghan wrote a separate opinion. Judge Wilkins wrote a separate opinion, in which Chief Judge Wilkinson and Judges Russell, Niemeyer, Luttig, and Williams join.

_____

**COUNSEL**

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellants. John Samuel Bowler, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** William Davis, Lumberton, North Carolina, for Appellant Hodge. Janice McKenzie Cole, United States Attorney, Paul S. Wilson, Special Assistant United States Attorney, OFFICE OF THE STAFF JUDGE ADVOCATE, Fort Bragg, North Carolina, for Appellee.

_____

**OPINION**

WILKINS, Circuit Judge:

Anthony D. Barber and David L. Hodge, Jr. appeal the sentences imposed upon them by the district court following their pleas of guilty to second-degree murder. See 18 U.S.C.A.§ 1111(a) (West Supp. 1997). They assert that the district court erred in departing upward from their applicable guideline ranges based upon its conclusion that various circumstances--the fact that the murder was premeditated, that it occurred during a robbery, and that it was committed with a dangerous weapon, a firearm--removed the case from the heartland of situations encompassed within the second-degree murder guideline. See U.S. Sentencing Guidelines Manual § 2A1.2 (1994). Because we cannot conclude on the present record that the district court acted within its discretion in departing upward based on the discharge of a firearm, and because we are unable to conclude that the district court

2

would have imposed the same sentence in the absence of this factor, we vacate the sentence imposed and remand for resentencing.

I.

Terrell Fields was murdered on April 14, 1994 by two shotgun blasts to the back of his head; his body was discovered the following day in a wooded area on federal lands at Fort Bragg, North Carolina. Some of the particulars surrounding the murder are unclear because accounts of the murder provided by Barber and Hodge sharply conflict concerning various points. The relevant facts for our purposes, however, are not disputed.

In the early part of 1994, Barber began to chauffeur Fields. According to Barber, Fields was involved in illicit drug distribution activities in North Carolina, and when Barber expressed his desire to end their relationship, Fields threatened Barber and his family. Fear of Fields, Barber asserts, led him to plan Fields' murder.

On April 14, 1994, Fields met Barber and Hodge at a local gasoline station in response to Barber's page, and the three men departed in Barber's automobile. Later that evening, Hodge shot Fields in the back of the head at point-blank range with a .12 gauge shotgun that Barber previously had purchased. After the second blast, Barber robbed Fields of approximately $50 in cash and divided this money with Hodge. Soon afterward, Barber and Hodge were arrested and charged with conspiracy to commit murder, see 18 U.S.C.A. § 1117 (West 1984); felony murder, see 18 U.S.C.A.§ 1111(a); use of a firearm in connection with those crimes, see 18 U.S.C.A. § 924(c)(1) (West Supp. 1997); and robbery, see 18 U.S.C.A. § 2111 (West 1984). On the day of his arrest, Hodge provided a statement in which he confessed to firing the first shot, but claimed that the shooting was an accident and that Barber had fired the second shot. Hodge also confessed to sharing in the proceeds of the robbery.

The Government entered into plea agreements under which Barber and Hodge agreed, inter alia, to plead guilty to second-degree murder; the Government agreed to dismiss the remaining charges. The plea agreements did not specify the sentence to be imposed, and Barber and Hodge acknowledged in the agreements that the district court

3

might impose a maximum sentence of life imprisonment. The agreements further provided that Barber and Hodge would completely and truthfully disclose to the Government all conduct relevant to the indictment, but that all self-incriminating information supplied pursuant to the plea agreement would not be used in determining their applicable guideline ranges. See U.S.S.G.§ 1B1.8(a). The district court accepted their pleas.

At sentencing--applying U.S.S.G. § 2A1.2, the guideline applicable to second-degree murder--the district court calculated Barber's and Hodge's base offense levels as 33, but reduced this by three levels for acceptance of responsibility, see U.S.S.G. § 3E1.1. Combining this adjusted offense level of 30 with their Criminal History Categories of I resulted in applicable guideline ranges of 97-121 months imprisonment. The district court, however, adopted the recommendation of the presentence report that upward departures from these guideline ranges were appropriate. See U.S.S.G. §§ 5K2.0, p.s. (Grounds for Departure), 5K2.6, p.s. (Weapons and Dangerous Instrumentalities). With respect to Hodge, the court departed because § 2A1.2 did not take into account: (1) a premeditated murder; (2) the use of a dangerous weapon; and (3) the commission of a robbery. The court relied on the same bases with respect to Barber--except for premeditation because the statement providing the evidence to support the finding of premeditation was provided pursuant to Barber's cooperation agreement and this information thus was protected as to him. The district court departed upward seven offense levels, resulting in a guideline range of 210-262 months, and imposed a sentence of 210 months imprisonment on each defendant. Barber and Hodge appeal from these sentences.[1]

_____

[1] A panel of this court heard argument and rendered a decision holding that the district court erred in departing upward on the basis of premeditation and discharge of a firearm and remanded to the district court for resentencing. See United States v. Barber, 93 F.3d 1200 (4th Cir. 1996). Subsequently, the en banc court agreed to hear this appeal, and the panel decision was vacated.

4

II.

Congress has instructed that a district court must impose a sentence within the range that results from the proper application of the guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A. § 3553(b) (West Supp. 1997). The Supreme Court recently established the analysis courts must employ in determining whether a potential basis for departure was"`adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" Koon v. United States, 116 S. Ct. 2035, 2044 (1996) (quoting 18 U.S.C.A. § 3553(b)).

In Koon, the Court explained that when analyzing whether a potential basis for departure was adequately considered by the Commission in formulating the guidelines, a sentencing court must focus on whether the factor is taken into account by the guidelines, policy statements, or commentary and whether it is encompassed within the heartland of situations to which the applicable guideline was intended to apply. See id. at 2044; see also U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b). The Koon Court emphasized that it is essential to recognize that "`[t]he Commission intend[ed] the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes'" and to consider as potential bases for departure factors that take the case outside the heartland of the applicable guideline. Koon , 116 S. Ct. at 2044 (quoting U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b)). Thus, the Commission has indicated that it adequately considered circumstances within the heartland of conduct encompassed by the guidelines and did not consider conduct falling outside the heartland. Accordingly, the crucial inquiry is whether the individual facts that the district court is considering are taken into account in the heartland of situations encompassed within the applicable guideline.

In order to ascertain whether a factor under consideration is an appropriate basis for departure, the Koon Court instructed that after identifying a potential basis for departure, a sentencing court should determine whether that factor was forbidden, encouraged, discour-

5

aged, or unmentioned by the Commission as a basis for departure. See id. at 2045. Which of these categories a factor falls into is resolved by reference to the guidelines, policy statements, and commentary. See id.; see also U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b). Whether, and under what circumstances, a sentencing court properly may depart on the basis of any given factor is measured in large part by the category into which the factor falls. See Koon, 116 S. Ct. at 2045.

If a factor is one on which the Commission has forbidden reliance --e.g., drug or alcohol dependence or abuse (U.S.S.G. § 5H1.4, p.s.); race, sex, national origin, creed, religion, or socio-economic status (U.S.S.G. § 5H1.10, p.s.); lack of guidance as a youth or similar circumstances indicating a disadvantaged upbringing (U.S.S.G. § 5H1.12, p.s.); personal financial difficulties or economic pressure on a trade or business (U.S.S.G. § 5K2.12, p.s.)--a departure premised upon that factor is never permissible. See Koon, 116 S. Ct. at 2050. All other factors, however, potentially may provide a basis for departure under appropriate circumstances. See id.; U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b) (explaining that with the exception of those factors specifically forbidden as bases for departure in the guidelines, the Commission did "not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case").

If the Commission has indicated through the guidelines, policy statements, or commentary that a specified factor may provide an appropriate basis for departure, that factor is considered to be an "encouraged factor," and a district court may consider departure on that basis provided that the applicable guideline does not already account for the factor. Koon, 116 S. Ct. at 2045. Accordingly, if a potential ground for departure identified by the district court is one on which the Commission has encouraged departure, the sentencing court should next analyze whether the applicable guideline takes that factor into account--e.g., by adjustment to the base offense level through a specific offense characteristic,[2] by inclusion in the heartland of the

_____

[2] For example, the Commission identified physical injury as an encouraged factor for departure. See U.S.S.G.§ 5K2.2, p.s. The guideline for robbery, however, takes the seriousness of physical injury into account

6

applicable guideline,**3** or by instruction that the factor is an appropriate one to consider in determining the application of an adjustment to the offense level.**4** If the factor is not taken into account within the applicable guideline, the district court may exercise its discretion by departing from the guideline range. But, if the encouraged factor is taken into account within the applicable guideline, the sentencing court may depart only if it concludes that the factor is present to such an exceptional or extraordinary degree that it is outside the heartland of situations encompassed within the applicable guideline. See id.; United States v. Brock, 108 F.3d 31, 34-35 (4th Cir. 1997). Likewise, if the factor is one upon which the Commission discourages depar-

_____

by a specific offense characteristic adjustment, increasing the offense level incrementally based on the seriousness of the physical injury suffered. See U.S.S.G. § 2B3.1(b)(3). Because § 2B3.1 includes a specific offense adjustment "based on the extent of any injury," departure based on physical injury pursuant to § 5K2.2, p.s. generally would not be appropriate. U.S.S.G. § 5K2.0, p.s.

**3** For example, the Commission identified death as a result of the defendant's criminal conduct as an encouraged basis for upward departure. See U.S.S.G. § 5K2.1, p.s. Nevertheless, death clearly is encompassed within the heartland of the first-degree murder guideline. See U.S.S.G. § 2A1.1. By contrast, the Commission identified victim misconduct as an encouraged factor for downward departure. See U.S.S.G. § 5K2.10, p.s. In Koon, the Supreme Court explained that U.S.S.G.§ 2H1.4, the guideline applicable to deprivations of constitutional rights under color of state law, created a heartland of aggravated assaults committed under color of law by incorporating U.S.S.G. § 2A2.2 for aggravated assault. See Koon, 116 S. Ct. at 2048-50. Accordingly, the Koon Court held, a district court did not abuse its discretion in concluding that an aggravated assault under color of law that was provoked by the victim did not fall within the heartland of that offense and departure based on§ 5K2.10, p.s. was appropriate. See id. at 2050.
**4** For example, the commentary to U.S.S.G. § 3E1.1 directs that in deciding whether a defendant is entitled to a downward adjustment for acceptance of responsibility, the district court may consider, inter alia, post-offense rehabilitation efforts. See U.S.S.G. § 3E1.1, comment. (n.1(g)). Consequently, departure based on post-offense rehabilitation efforts would be proper only if the district court determined that these efforts were extraordinary. See United States v. Brock, 108 F.3d 31, 35 (4th Cir. 1997).

7

ture, a district court properly may depart only if it finds that the factor exists to such an uncommon degree that it is outside the heartland of circumstances embraced by the relevant guideline. See Koon, 116 S. Ct. at 2045; Brock, 108 F.3d at 34-35.

If a factor is one upon which the Commission has neither forbidden, encouraged, nor discouraged departure in the guidelines, policy statements, or commentary, the circumstance is considered to be an unmentioned factor. See Koon, 116 S. Ct at 2045; Brock, 108 F.3d at 35. Although the Commission recognized the possibility of departures based on factors not mentioned in the guidelines, it anticipated that such departures would be "highly infrequent""because the guidelines, offense by offense, seek to take account of those factors that the Commission's data indicate[d] made a significant difference in pre-guidelines sentencing practice." U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b). Thus, the Commission envisioned that departures principally would be reserved for those "rare" situations in which an important factor occurs in connection with a crime in which it typically occurs only infrequently. Id. Consequently, departure on the basis of an unmentioned factor is permissible only when that circumstance takes the case outside the heartland of situations addressed by the applicable guideline. See Koon, 116 S. Ct. at 2045. The Koon Court stressed:

> If a factor is unmentioned in the Guidelines, the court must, after considering the structure and theory of both relevant individual guidelines and the Guidelines taken as a whole, decide whether it is sufficient to take the case out of the Guideline's heartland.

Id. (citation and internal quotation marks omitted). Stated differently, the heartland of situations encompassed within the applicable guideline is the sine qua non in assessing whether a departure on the basis of an unmentioned factor is appropriate.

If the district court determines that an aggravating or mitigating circumstance exists that takes the case outside the heartland of the applicable guideline, the court may exercise its discretion to depart from the otherwise applicable guideline range. Of course, in exercising this discretion the district court must consider whether the circumstance

8

at issue is such that a sentence outside the guideline range "should result." 18 U.S.C.A. § 3553(b); see Rybicki, 96 F.3d at 758. And, "in determining which sentence to choose," a sentencing court must consider the statutory goals of sentencing set forth in 18 U.S.C.A. § 3553(a)(2) (West 1985). Koon, 116 S. Ct. at 2051.

III.

Before turning to address the grounds for departure relied upon by the district court, we pause to acknowledge yet another significant issue addressed by the Court in Koon--the appropriate standard an appellate court should employ in reviewing the decision of a district court to depart. Koon emphasized the substantial deference due to the departure decisions of district courts. See id. at 2046. The Court explained that the determination of whether certain aspects of a case are unusual enough to take it outside the heartland of situations encompassed within the applicable guideline is essentially a factual inquiry, necessarily involving a comparison of the facts of the situation under consideration with the usual case to which the guideline in question applies. See id. at 2046-47. And, the Court recognized the institutional advantage that sentencing courts have in making this comparison, both in terms of the number of factual scenarios with which they have contact and their proximity to the factfinding process, which provides them a unique competence to make these types of determinations. See id. at 2047.

Koon explained that a "court of appeals should `apply a unitary abuse-of-discretion standard.'" Id. at 2048 (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 403 (1990)). And, the Court in Koon expressly rejected a multilayered standard of review under which various stages in the review process are labeled as legal questions subject to de novo review, as factual findings subject to a clearly erroneous standard, or as conclusions subject to an abuse of discretion standard. See id. at 2047-48.

A hypothetical illustrates the efficacy of a unitary standard of review. If a district court were to depart upward based upon physical injury pursuant to U.S.S.G. § 5K2.2, p.s., we might conclude that it had abused its discretion if the underlying offense were obstruction of justice, because the guideline applicable to that offense, U.S.S.G.

9

§ 2J1.2(b)(1), provides for an eight-level enhancement "[i]f the offense involved caus[es] ... physical injury to a person." Our review in such a situation would amount to a de novo review of the applicable guideline to determine whether, as a matter of law, it takes physical injury into account. See United States v. Rybicki, 96 F.3d 754, 758 (4th Cir. 1996) (noting that when the determination of whether a guideline takes a certain encouraged departure factor into account requires a legal analysis of the guidelines, policy statements, and commentary, our review essentially is de novo). However, if the district court had recognized that § 2J1.2(b) accounted for physical injury, but had concluded that a departure was warranted because the type of physical injury inflicted by the defendant was so extraordinary that it was outside the heartland of situations encompassed by the applicable guideline, our review would be limited to determining whether the district court abused its discretion in finding that the physical injuries inflicted were outside the heartland of physical injuries encompassed within the guideline. See United States v. Bailey, 112 F.3d 758, 772 (4th Cir. 1997) (holding that departure from kidnapping guideline based on physical injury, see U.S.S.G. § 5K2.2, p.s., and unlawful restraint, see U.S.S.G.§ 5K2.4, p.s., was not an abuse of discretion because although the heartland of the applicable guideline took these matters into account, they were present to an extraordinary degree); United States v. Hairston , 96 F.3d 102, 108-09 (4th Cir. 1996) (holding that downward departure based on defendant's restitution was improper because restitution is taken into consideration in assessing whether acceptance of responsibility adjustment should apply and district court abused its discretion in finding defendant's restitution was extraordinary), cert. denied, 117 S. Ct. 956 (1997). This hypothetical considers only two of the possible situations that might be presented with a departure based on an encouraged factor. The endless variety of potential scenarios presented under the analysis required by Koon precludes categorization of district court decisions into simplistic classes.

Of course, having adopted a consolidated abuse of discretion standard of review, the Court in Koon was quick to acknowledge, lest there be confusion on the point, that this standard would not shield erroneous legal conclusions from reversal. See Koon, 116 S. Ct. at 2047-48. Furthermore, the district court would abuse its discretion if it based its departure decision on a clearly erroneous factual finding.

10

See Rybicki, 96 F.3d at 758. Thus, the Court made clear that it intended to adopt a traditional abuse of discretion standard. See Koon, 116 S. Ct. at 2047-48 (relying on Cooter & Gell, 496 U.S. at 402-05).

With these principles from Koon in mind, we turn to apply them to the three bases for departure relied upon by the district court.

IV.

The first ground the district court offered in support of its decision to depart was that Barber and Hodge robbed Fields in the course of the murder. We conclude that the district court did not abuse its discretion in departing upward on this basis.

Robbery is not identified in the guidelines, policy statements, or commentary as a forbidden, encouraged, or discouraged basis for departure. As such, we consider robbery to be an unmentioned factor. The district court did not abuse its discretion in concluding that the heartland encompassed by the second-degree murder guideline does not account for robberies committed in connection with the murder. Indeed, by statutory definition, a second-degree murder is one that is committed without premeditation and is not committed in connection with an aggravating felony such as robbery. See 18 U.S.C.A. § 1111(a).

Appellants argue, however, that it was inappropriate for the district court to depart upward from the second-degree murder guideline based upon conduct that formed the basis of counts that were dismissed by the Government as a result of their plea negotiations.**5** They maintain that the guidelines place explicit limits on the manner in which uncharged or dismissed conduct may be used in determining sentences and that a departure from the guideline range is not an approved usage. In support of this position, they point to U.S.S.G. § 6B1.2(a), which requires a district court to determine prior to accepting a plea of guilty pursuant to an agreement contemplating the dismissal of charges whether the remaining counts "adequately reflect

_____

**5** Barber and Hodge do not contend that the plea agreement itself prohibited consideration of this conduct or that the plea agreement accepted by the district court called for the imposition of a certain sentence.

11

the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines." Furthermore, they note that § 6B1.2(a) and § 1B1.3(a) expressly permit the consideration of uncharged or dismissed conduct in determining the appropriate guideline range, and therefore, by negative implication, these guidelines discourage consideration of uncharged or dismissed conduct for purposes of determining the appropriateness of a departure.

We are unpersuaded. Appellants overlook U.S.S.G. § 1B1.4, which expressly directs that "[i]n determining ... whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." U.S.S.G. § 1B1.4. This clear statement obviously is broad enough to include dismissed, uncharged, or acquitted conduct. Moreover, if this language were not plain enough, the background commentary to § 1B1.4 addresses this specific issue and explains that criminal conduct not taken into account as a result of a plea agreement "may be considered in determining whether and to what extent to depart from the guidelines." U.S.S.G. § 1B1.4, comment. (backg'd.). Since provisions of the guidelines explicitly authorize consideration of conduct underlying charges dismissed pursuant to a plea agreement in determining whether to depart, the directive included in § 6B1.2(a) may not be read to require that a district court determine that the guideline range applicable to the remaining counts is sufficient to reflect adequately the seriousness of the criminal conduct at issue without departure. Rather, § 6B1.2(a) dictates that a district court ascertain whether the statutory maximum sentence available for the remaining counts is adequate to permit the court to impose a sentence either within the applicable guideline range or an appropriate sentence outside the guideline range if a departure is warranted.

We also reject Appellants' contention that consideration of conduct from dismissed counts would severely undermine the plea bargaining process and threaten the proportionality in sentencing that the guidelines seek to foster. Reality does not bear out their argument. There is little difference between utilizing uncharged, dismissed, or even acquitted conduct as a basis for departure and employing it as relevant conduct under U.S.S.G. § 1B1.3 to determine the base offense level

12

or adjustments to it. And, the propriety of using uncharged, dismissed, and acquitted conduct for these purposes is well settled. See, e.g., United States v. Watts, 117 S. Ct. 633, 636-38 (1997) (per curiam) (holding that consideration by a sentencing court of acquitted conduct was appropriate in establishing the applicable guideline range or in determining the sentence to impose within the guideline range); United States v. Carroll, 3 F.3d 98, 102 n.10 (4th Cir. 1993) (per curiam) (noting that this court has consistently approved of consideration by the district court as relevant conduct pursuant to § 1B1.3(a) conduct that was uncharged, that was charged in a count that was subsequently dismissed, or that was charged in a count of which the defendant was acquitted). We perceive no rational basis upon which to conclude that consideration of such relevant conduct for purposes of departure would create any greater difficulty to the plea bargaining process than it does in determining the guideline range. Furthermore, the plea bargaining process before the implementation of the guidelines system allowed a sentencing court to exercise virtually unrestrained discretion in sentencing within the statutory limits. Even with the potential that a district court may depart, a defendant faces more certainty in sentencing under the guidelines scheme than under the prior system.

In sum, we reject Appellants' argument that the guidelines proscribe reliance on uncharged or dismissed conduct in determining whether a departure from the guideline range is warranted and align this circuit with those that have adopted the better reasoned rule to the contrary. Compare United States v. Baird, 109 F.3d 856, 864-65 (3d Cir. 1997) (holding that conduct contained in dismissed counts may be considered by a district court in determining whether to depart from the applicable guideline range); United States v. Ashburn, 38 F.3d 803, 807-08 (5th Cir. 1994) (en banc) (same); United States v. Zamarripa, 905 F.2d 337, 341 (10th Cir. 1990) (same), disapproved on other grounds, Williams v. United States, 503 U.S. 193, 198 (1992); and United States v. Kim, 896 F.2d 678, 684 (2d Cir. 1990) (same), with United States v. Harris, 70 F.3d 1001, 1002-04 (8th Cir. 1995) (holding that conduct from dismissed counts cannot be relied upon as a basis for departure); and United States v. Castro-Cervantes, 927 F.2d 1079, 1082 (9th Cir. 1990) (same). See also United States v. Ruffin, 997 F.2d 343, 345-46 (7th Cir. 1993) (explaining that dis-

trict courts properly may consider conduct from dismissed counts in departing upward for inadequacy of criminal history).

V.

The decision of the district court to depart upward on the basis that the homicide was premeditated is affirmed by an equally divided court. Chief Judge Wilkinson and Judges Russell, Wilkins, Niemeyer, Luttig, Williams, and Motz voted to affirm the decision of the district court. Judges Widener, Hall, Murnaghan, Ervin, Hamilton, Michael, and Phillips voted to reverse the decision of the district court.

VI.

The third basis upon which the district court rested its departure decision is that the murder involved the use of a dangerous weapon or instrumentality, namely a firearm. This factor is one on which the Commission has encouraged departure. Section 5K2.6, p.s. provides:

> If a weapon or dangerous instrumentality was used or possessed in the commission of the offense the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others. The discharge of a firearm might warrant a substantial sentence increase.

Because use of a weapon or dangerous instrumentality is an encouraged basis for departure, we are called upon to determine whether it is taken into account by the second-degree murder guideline. Review of the text, policy statements, and commentary of § 2A1.2 provides no basis for concluding that the Commission took the use of a dangerous weapon into account in the second-degree murder guideline. There is no specific offense adjustment relating to use of a weapon, nor is there anything in the commentary or policy statements expressly taking the use of a weapon into account. Consequently, we must determine whether the use of a weapon to commit a second-degree murder is within the heartland of conduct encompassed by

14

§ 2A1.2. See Koon, 116 S. Ct. at 2049 (looking to the heartland of the applicable guideline to determine whether it took the encouraged departure factor into account). Although it is true that a murder may be committed by means other than with a weapon or dangerous instrumentality, generally speaking it is difficult to imagine anything more within the heartland of conduct encompassed by the second-degree murder guideline than the use of a dangerous weapon. Indeed, if we were to ignore that the overwhelming majority of murders are committed with a weapon, we would sanction an upward departure in virtually every second-degree murder case--a result clearly at odds with the Commission's and Koon's instructions that departures are to be reserved for the extraordinary case.

Our conclusion that in general the use of a weapon or dangerous instrumentality is taken into account in the heartland of the second-degree murder guideline does not end our inquiry, however. Departure based upon an encouraged factor that is taken into account is permitted if the district court determines that the factor is present to an extraordinary degree. We review a decision of the district court that an encouraged factor is present to an extraordinary degree for an abuse of discretion. See Koon, 116 S. Ct. at 2047-48; Hairston, 96 F.3d at 109.

No doubt because the district court did not have the benefit of the Koon decision, it did not make an express finding concerning whether the firearm usage at issue here was extraordinary. And, although the court observed that the murder was "vicious" and that Fields "was shot twice with a shotgun," it had no occasion to make any factual findings concerning many of the circumstances surrounding the murder. J.A. 79. With these limited factual findings, we are unable to conclude that the use of this firearm in this second-degree murder was extraordinary. Under these circumstances, we find it appropriate to remand to permit the district court to consider in the first instance whether the firearm usage at issue was atypical of situations encompassed within the heartland of § 2A1.2. See Brock, 108 F.3d at 35 & n.2.

VII.

Because we are unable to conclude on this record that all of the bases upon which the district court relied properly supported its

15

departure, we must determine whether the sentences imposed may be affirmed on the strength of the remaining grounds or whether a remand for resentencing is required. When a district court relies on an improper ground for departure, remand is not automatic. See Williams v. United States, 503 U.S. 193, 202 (1992). Instead, a reviewing court may affirm the sentence imposed if it is able to decide "on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed." Id. at 203. If we are unable to say that "the district court would have imposed the same sentence had it not relied upon the invalid factor or factors," we must remand for resentencing. Id.

Although there is some indication in the record to lead to the conclusion that the district court would have imposed the same sentence irrespective of the number of grounds to support its departure decision,[6] we cannot say this with sufficient surety to affirm the sentence imposed. In disclosing its initial intention to depart during the sentencing hearing, the district court referred to the guideline applicable to robbery, U.S.S.G. § 2B3.1, and noted that the robbery guideline contained a specific offense characteristic calling for a seven-level increase if a firearm was discharged. By relying on the discharge of the firearm adjustment by analogy, it appears that the district court placed heavy reliance in determining the extent of the departure on the discharge of the firearm. And, the district court did not indicate that it would have departed to the same extent regardless of the number of bases available to support the departure. On this record, we are compelled to remand in order to permit the district court to reconsider its decision in light of our opinion. To avoid needless remands in the future, however, we encourage district judges to make plain on the record whether they would impose the same sentence irrespective of the number of bases supporting the departure.

VIII.

For the foregoing reasons, we conclude that the district court acted within its discretion in departing on the ground that Barber and Hodge

_____

[6] For example, despite the fact that the district court was unable to utilize premeditation as a basis for departure for Barber, it departed to the same extent for Barber as it did for Hodge.

16

robbed the victim in connection with the murder and affirm by an equally divided court its decision to depart on the basis that the murder was premeditated. However, because the use of a weapon or dangerous instrumentality is an encouraged factor that is taken into account within the heartland of second-degree murder, and because the district court did not make factual findings concerning the circumstances surrounding the murder or whether the discharge of the firearm at issue was extraordinary enough to remove it from the heartland of situations encompassed within the second-degree murder guideline, we must remand to permit the district court to consider these matters in the first instance. Furthermore, because we cannot say on this record whether the district court would have imposed the same sentence without reliance on the discharge of a firearm, we remand for resentencing.

VACATED AND REMANDED FOR RESENTENCING

MURNAGHAN, Circuit Judge:

I write separately only to emphasize that the district court's decision to depart upward for premeditation is affirmed by an equally divided court. The Supreme Court has held that "an affirmance by an equally divided Court is not entitled to precedential weight." Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 234 n.7 (1987). I therefore think that Judge Wilkins' opinion explaining the rationale of the seven votes of one side of the equally divided court is inappropriate. The issue of upward departure for premeditation in a second degree murder case remains unresolved in the Fourth Circuit, and we should avoid a proliferation of dicta. That is especially true where the issue involved is an interpretation of the Sentencing Guidelines and the views on premeditation are expressed by one who served as a member (and chairman) of the Sentencing Guidelines Commission.

None of the authorities that Judge Wilkins cites to demonstrate that members of an equally divided court have occasionally expressed their views has involved a case that interpreted language in the Sentencing Guidelines. Judge Wilkins was Chairman of the Sentencing Guidelines Commission when the disputed language was adopted. I fear that readers of his separate opinion will give his views much

17

weight because he is undisputedly an expert in Sentencing Guidelines issues. Since the court remains equally divided on the issue, and his separate opinion therefore has no precedential value, I think such confusion is unnecessary.

I do not wish to commit the regrettable practice I deprecate by publishing a response on the merits. My views were adequately expressed in the panel opinion vacated by the grant of rehearing en banc. See United States v. Barber, 93 F.3d 1200 (4th Cir. 1996).

WILKINS, Circuit Judge, writing separately as to premeditation:

I.

I write separately to express my strong belief that the analysis set forth in Koon v. United States, 116 S. Ct. 2035 (1996), compels a conclusion that the district court did not abuse its discretion in departing on the basis that Field's murder was premeditated. Chief Judge Wilkinson and Judges Russell, Niemeyer, Luttig, and Williams join in this opinion.

The fact that a murder was premeditated has not been identified by the Commission in the guidelines, policy statements, or commentary as a forbidden, encouraged, or discouraged basis for departure. Premeditation cannot be considered a forbidden factor because it is not listed by the Commission as one "which never can be" a basis for departure. Id. at 2044; see id. at 2050. Similarly, premeditation is not an encouraged or discouraged factor because the appropriateness of premeditation as a basis for departure is not expressly addressed in the guidelines, policy statements, or commentary. See id. at 2045 (discussing factors that the Commission has identified as encouraged and discouraged factors).

Because premeditation is a factor that has been neither forbidden, encouraged, nor discouraged as a basis for departure by the Commission, it must be considered an unmentioned factor. The Supreme Court wrote in Koon that to determine whether departure based on an unmentioned factor is appropriate, a "court must, after considering the structure and theory of both relevant individual guidelines and the

18

Guidelines taken as a whole, decide whether [the factor] is sufficient to take the case out of the Guideline's heartland." Id. (emphasis added; citation omitted). Accordingly, it must be determined whether a premeditated murder is taken into account within the heartland of the second-degree murder guideline. And, we easily conclude that the district court did not abuse its discretion in ruling that a premeditated murder is not within the heartland of situations encompassed by the second-degree murder guideline. Section 2A1.2 was written by the Commission to address the heartland of second-degree murders. See U.S. Sentencing Guidelines Manual § 2A1.2 (1994). By statutory definition, a second-degree murder is one that was committed without premeditation. See 18 U.S.C.A. § 1111(a) (West Supp. 1997). Indeed, Hodge offers no serious argument to the contrary.

The argument is made, however, that the Commission must have considered premeditation in formulating the second-degree murder guideline, U.S.S.G. § 2A1.2, because it set a higher base offense level for the first-degree murder guideline, U.S.S.G. § 2A1.1, while establishing a lower base offense level for the second-degree murder guideline. See United States v. Kelly, 1 F.3d 1137, 1139-41 (10th Cir. 1993) (holding that although premeditation is outside the heartland of second-degree murder guideline, upward departure from second-degree murder guideline based on premeditation was improper because Commission "considered" the defendant's state of mind in assigning a higher base offense level to first-degree murder than to second-degree murder). It cannot be doubted that in establishing a higher base offense level for first-degree murder, the Commission took the fact that such murders are premeditated--and hence more serious--into consideration. And, as a corollary, in establishing a lower base offense level for second-degree murders, the Commission was cognizant of the fact that second-degree murders are not premeditated. In this sense, it is obvious that the Commission "considered" premeditation in establishing the homicide guidelines as a whole. It is equally clear that this fact is irrelevant in determining whether a departure from the second-degree murder guideline is appropriate.

Koon emphasized repeatedly that in formulating the guidelines "`[t]he Commission intend[ed] the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes'" and to consider as a

19

potential basis for departure factors that take the case outside the heartland. Koon, 116 S. Ct. at 2044 (quoting U.S.S.G. Ch. 1, Pt. A, intro. comment. 4(b)); see id. (noting that "the Commission did not adequately take into account cases that are, for one reason or another, `unusual'"); id. ("Atypical cases were not `adequately taken into con- sideration,' and factors that may make a case atypical provide poten- tial bases for departure."); id. at 2046 ("Before a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline."). The quintessence of the Commission's direction on departures and the ultimate point of the Koon decision is that analysis of whether a factor was "considered" by the Commission in formulating the guidelines involves an inquiry into the heartland of conduct encompassed by the applicable guideline--not speculation into the subjective thought pro- cesses that may have led to the development of various guidelines. Consequently, for purposes of determining whether an unmentioned mitigating or aggravating circumstance exists that was not adequately considered by the Commission in formulating the guidelines, it is irrelevant whether a particular factor may have been a motivating or even determining factor in leading the Commission to structure the guidelines in a particular way. Instead, the relevant inquiry is whether the unmentioned factor is within the heartland of conduct encom- passed by the applicable guideline.

There simply is no way to harmonize the command of the Supreme Court in Koon to determine whether a departure is appropriate by examining whether an unmentioned departure factor is within the heartland of the conduct encompassed by the applicable guideline and the notion that a departure decision should turn on whether the Com- mission "thought about" the factor before formulating the guidelines. The latter inquiry is misdirected. In this context, then, "considered" properly means "taken into account," "accounted for," or "incorpo- rated into"; it does not mean "may or must have thought about." Because review of the guidelines, policy statements, and commentary demonstrates that premeditation is an unmentioned departure factor, and because the heartland of the second-degree murder guideline clearly does not encompass premeditated murder, the district court did not abuse its discretion in departing on that basis.

Finally, the failure by the remaining members of the court to accept this reasoning is inconsistent with their decision that the district court

20

did not abuse its discretion in departing on the basis that the murder was committed during the course of a robbery. See majority op. at 16. Pursuant to 18 U.S.C.A. § 1111(a), first-degree murder is committed in one of two ways. First-degree murder is: (1) one in which the homicide is premeditated, or (2) one in which the homicide is committed in the course of a specified felony, for example robbery. See 18 U.S.C.A. § 1111(a). Because a homicide committed either with premeditation or during the course of a robbery is first-degree murder, it is undisputed that these factors are not within the heartland of offenses encompassed by the second-degree murder guideline. And, all of the members of the court agree that because the murder of Fields was committed in the course of a robbery and is therefore outside the heartland of the second-degree murder guideline, an upward departure was proper. See majority op. at 17. However, those members of the court who have voted to reverse the decision of the district court on this issue reject the identical reasoning with respect to premeditation. They instead apparently conclude that because the Commission "took premeditation into account" in establishing a higher offense level for the first-degree murder guideline, it must have also "considered" it when writing the separate guideline for second-degree murder. That reasoning would equally compel the incorrect conclusion that a robbery committed during the course of a homicide would not justify an upward departure from the second-degree murder guideline range. However, like premeditation, the commission of a specified felony (i.e., robbery) during the course of a homicide is the additional element that by statute separates first-degree murder from second-degree murder. Both of these elements obviously are within the heartland of first-degree murder. Just as obviously, neither is within the heartland of second-degree murder.

II.

Judge Murnaghan's unsupported statement that a judge should remain silent when an en banc vote on a particular issue is equally divided is misplaced. To the contrary, many times a judge feels that it is important for the litigants and others to know why the court is divided on a particular issue. And, we routinely author opinions that do not carry the weight of a majority opinion such as concurring opinions, dissenting opinions, and opinions following a failed poll for en banc consideration; an expression of the reasons supporting a vote

21

in this situation is not dissimilar. Moreover, the expression of the views of individual judges when an en banc vote is equally divided is hardly novel. Members of this court often have written to communicate their positions regarding an equally divided en banc vote. See, e.g., United States v. Hamrick, 43 F.3d 877 (4th Cir. 1995); Smith v. Dixon, 14 F.3d 956 (4th Cir. 1994). Indeed, Judge Murnaghan has so written and has joined in the opinions of others doing so. See, e.g., Elmore v. Cone Mills Corp., 23 F.3d 855 (4th Cir. 1994) (Judge Murnaghan authored a concurring opinion.); Faulkner Adver. Assocs., Inc. v. Nissan Motor Corp., 945 F.2d 694 (4th Cir. 1991) (Judge Murnaghan joined Judge Ervin's opinion.); see also United States v. Mandel, 609 F.2d 1076 (4th Cir. 1979) (Judge Murnaghan authored a statement expressing the reasons why he believed affirmance by an equally divided en banc court was inappropriate.). Likewise, this practice is employed by other courts of appeals. See, e.g., Universidad Cent. de Bayamon v. NLRB, 793 F.2d 383 (1st Cir. 1986); Baker v. Pataki, 85 F.3d 919 (2d Cir. 1996); United States v. Kirk, 105 F.3d 997 (5th Cir. 1997); Stupak-Thrall v. United States, 89 F.3d 1269 (6th Cir. 1996); Varhol v. National R.R. Passenger Corp., 909 F.2d 1557 (7th Cir. 1990); Jenkins ex rel. Agyei v. Missouri, 807 F.2d 657 (8th Cir. 1986); United States v. Juarez-Rodriguez , 568 F.2d 120 (9th Cir. 1976); Casias v. United States, 315 F.2d 614 (10th Cir. 1963); Rainey v. Beech Aircraft Corp., 827 F.2d 1498 (11th Cir. 1987); Hotel & Restaurant Employees Union, Local 25 v. Smith, 846 F.2d 1499 (D.C. Cir. 1988). And, on occasion, even Supreme Court Justices have set forth the reasoning supporting their positions when an affirmance was accomplished by an equally divided vote. See Standard Indus., Inc. v. Tigrett Indus., Inc., 397 U.S. 586 (1970); Ohio ex rel. Eaton v. Price, 364 U.S. 263 (1960). I perceive nothing inappropriate in setting forth the reasoning underlying my view that premeditation was an acceptable basis for departure.

Judge Murnaghan further writes that it is particularly improper for me to express my views because of my prior service as Chairman of the United States Sentencing Commission, an agency created and existing in the judicial branch. Some years ago, then-Circuit Judge Breyer held that Commission members properly may decide guideline issues. See United States v. Wright, 873 F.2d 437, 446-47 (1st Cir. 1989). And, this circuit later adopted that same position. See United States v. Glick, 946 F.2d 335, 336-37 (4th Cir. 1991); see also

22

Mistretta v. United States, 488 U.S. 361, 406-07 (1989) (noting that opinions of federal judges who sat on Sentencing Commission will not unduly affect other judges).

Furthermore, Judge Murnaghan's position is especially ironic since I urged the approach that would not give a prior Commissioner an advantage. In addressing whether the Commission adequately considered a factor for purposes of determining whether a departure on that basis may be warranted, I stated that a court should not speculate as to the thought processes of the Commissioners. Instead, I wrote that the correct approach is to confine the analysis of whether a factor has been taken into account to the written words of the guidelines, commentary, and policy statements and to the heartland of offenses encompassed by the applicable guideline.

In view of the fact that Judge Murnaghan has on other occasions elected to express the reasoning underlying his vote when the en banc court was evenly divided, I find it particularly interesting that he now chooses to remain silent on the merits and to pursue a red herring by objecting to my writing on this issue. Rather than attempting to defend his position on the merits of the premeditation issue, he suggests that I stand mute also. This I decline to do.