UNPUBLISHED

# UNITED STATES COURT OF APPEALS
### FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

THOMAS DALE RICE,
    *Defendant-Appellant.*

No. 01-4642

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, Chief District Judge.
(CR-99-28)

Argued: December 3, 2002

Decided: March 11, 2003

Before WILLIAMS and TRAXLER, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Randy Virlin Cargill, MAGEE, FOSTER, GOLDSTEIN & SAYERS, P.C., Roanoke, Virginia, for Appellant. Anthony Paul Giorno, Assistant United States Attorney, Roanoke, Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

This case is before us following our remand for resentencing based on the district court's prior application of United States Sentencing Guidelines Manual (U.S.S.G.) § 2A3.1 rather than § 2A3.2. *See United States v. Rice* ("*Rice I*"), 8 Fed. Appx. 214 (4th Cir. 2001) (per curiam). On remand, the district court applied the appropriate guideline, and departed upward based on three factors. Because we conclude that one of these factors was an improper basis for departure, we must again remand for resentencing.

I.

The underlying facts and procedural details are set forth in *Rice I*. Therefore, we will summarize only briefly. Thomas Dale Rice, who was 56, made contact in an Internet chatroom with "Matt," an undercover officer posing as a 13-year-old boy. Over the Internet, Rice offered to perform various sexual activities with Matt. Eventually, Rice, who lived in West Virginia, agreed to meet "Matt" in Bedford, Virginia. Rice drove to Bedford, checked into a motel, and made preparations to engage in sexual activity with Matt. He was arrested later that day at a school where he believed he would be meeting Matt.

Rice pled guilty to 18 U.S.C.A. § 2423(b) (West 2000), which criminalizes "interstate travel with intent to engage in a sexual act with a juvenile." *Rice I*, 8 Fed. Appx. at 215-16. Applying the 1998 version of the sentencing guidelines, which were then in effect, the district court determined that U.S.S.G. § 2A3.1 ("Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse") was, of three potentially applicable guidelines, "the guideline most appropriate for the nature of the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. app. A, introductory cmt. (1998);

*see* U.S.S.G. § 1B1.2, cmt. n.1 (1998). The district court concluded that Rice's conduct was more analogous to sexual abuse than statutory rape because of "the age disparity between Rice and 'Matt' as well as the supposed immaturity and naivety of the ostensible victim." *Rice I*, 8 Fed. Appx. at 216. Under U.S.S.G. § 2A3.1, which fixed a based offense level of 27, Rice received a 60-month term of imprisonment.

On appeal, we concluded that the district court should have applied a different guideline. We held that the most analogous guideline for Rice's offense was U.S.S.G. § 2A3.2, with a base offense level of 15, entitled "Criminal Sexual Abuse of a Minor (Statutory Rape) or Attempt to Commit Such Acts." We explained that U.S.S.G. § 2A3.2 applied to conduct that "would be consensual but for the age of the victim," *id.* at 217-18, but that the guideline applied by the sentencing court, U.S.S.G. § 2A3.1, "was drafted to cover conduct prohibited by 18 U.S.C.A. §§ 2241 and 2242 . . . [which] criminalize conduct in which the victim, regardless of his or her age, has been coerced into sexual activity by force or threats," *id.* at 217. We concluded that U.S.S.G. § 2A3.2 was a better fit than § 2A3.1 in Rice's case because Rice had not "threatened 'Matt' or attempted to place him in fear or otherwise overcome his will such that the intended sexual encounter would have been nonconsensual." *Id.* at 217. Rice had been "forthcoming about his age, his own identity, and the conduct he proposed," and thus we were unable to divine a "secret scheme" suggesting that Rice did not expect the proposed encounter to be consensual. *Id.* at 218. Because Rice's proposed conduct "would have . . ., if completed, constituted the crime of statutory rape," U.S.S.G. § 2A3.2 was the appropriate guideline. *Id.* at 218.

In remanding for Rice to be resentenced under U.S.S.G. § 2A3.2, we stated "the factors identified by the district court — such as the ostensible victim's tender years and the age disparity between the two, as well as the use of the Internet — may indeed make Rice's offense different from the run-of-the-mill statutory rape and remove this case from the heartland of cases sentenced under U.S.S.G. § 2A3.2." *Id.*

On remand, neither Rice nor the government introduced new evidence, although the district court afforded them an opportunity to do

so at an evidentiary hearing. Applying Rice's base offense level of 15 under U.S.S.G. § 2A3.2, the district court awarded a downward adjustment of two levels for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a) (1998), for an offense level of 13. The district court then granted the government's motion for an upward departure, relying on three grounds for the departure.

First, the district court concluded that "facilitation of [the] underlying offense through the use of the Internet" was neither an encouraged nor discouraged basis for departure under the 1998 version of the guidelines but nevertheless was one that "adds a new and very dangerous element to the mix" and "takes this case out of the heartland of the guidelines." J.A. 139. The court reaffirmed its observation during Rice's original sentencing that "'[t]he use of the Internet to facilitate . . . predatory sexual conduct is, in the Court's view, . . . an aggravating factor not adequately taken into consideration under 2A3.2.'" J.A. 135-36. The second basis for departure identified by the district court was Rice's "preparation for anal intercourse with a person [he] believed to be a child of 13." J.A. 136. The court concluded that this aspect of Rice's conduct was an aggravating factor not adequately taken into consideration by the guidelines and took the case out of the heartland of statutory rape cases. The third and final basis for the district court's upward departure was the extreme difference in age between Rice and his ostensible victim. The court stated that the age disparity "carrie[d] a strong element of coercion." J.A. 140.

Accordingly, the court departed upward, increasing Rice's offense level by two levels for each factor for a total offense level of 19, and then adjusting downward by one additional level to 18 under U.S.S.G. § 3E1.1(b), which yielded a sentencing range of 27-33 months based on Rice's criminal history category of I. Rice received 33 months, which was three months less than his original sentence.

## II.

We review the district court's upward departure under an abuse of discretion standard. *See Koon v. United States*, 518 U.S. 81, 91 (1996); *see also United States v. Barber*, 119 F.3d 276, 283 (4th Cir. 1997) (en banc) (explaining that *Koon* "adopt[ed] a traditional abuse of discretion standard" for reviewing guideline departures).

A sentencing court must "impose a sentence of the kind, and within the range" required by the guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A. § 3553(b) (West 2000). In determining "whether a potential basis for departure was adequately considered by the [Sentencing] Commission . . ., a sentencing court must focus on whether the factor is taken into account by the guidelines, policy statements, or commentary and whether it is encompassed within the heartland of situations to which the applicable guideline was intended to apply." *Barber*, 119 F.3d at 280. The Commission has "adequately considered circumstances within the heartland of conduct encompassed by the guidelines and did not consider conduct falling outside the heartland." *Id.* The "heartland" of a given guideline is "a set of typical cases embodying the conduct that each guideline describes." U.S.S.G. Ch. 1, Pt.A, introductory cmt. 4(b).

Moreover, the sentencing court must decide "whether the factor is forbidden, encouraged, discouraged, or unmentioned by the Sentencing Commission as a ground for departure." *United States v. LeRose*, 219 F.3d 335, 339 (4th Cir. 2000). With respect to an encouraged factor, "the court is authorized to depart if the applicable Guideline does not already take it into account." *Koon*, 518 U.S. at 96. If the factor is taken into account by the appropriate guideline, then the court may depart "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id.* Similarly, a discouraged factor may serve as the basis for departure only if it is present to such an unusual degree that it cannot be said to come within the heartland of the applicable guideline. *See id.*; *see also Barber*, 119 F.3d at 281. Finally, a sentencing court may depart on the basis of a factor that is unmentioned by the guidelines as a basis for departure if that factor removes the case from the heartland of cases contemplated by the applicable guideline, but such departures should only occur in "'rare' situations." *Barber*, 119 F.3d at 281; *see* U.S.S.G. Ch. 1, Pt. A, introductory cmt. 4(b). With these general principles in mind, we consider the three bases used by the district court for its downward departure.

A.

Use of the Internet to facilitate a crime involving sexual activity with a minor is not forbidden, discouraged, or encouraged as a basis for departure from a sentence imposed under the 1998 version of U.S.S.G. § 2A3.2. Because the Commission did not refer to this factor in the policy statements, commentary, or the text of U.S.S.G. § 2A3.2, it is an unmentioned factor. *See Barber*, 119 F.3d at 280 ("Which of these categories a factor falls into is resolved by reference to the guidelines, policy statements, and commentary."). Essentially, the district court concluded that the use of the Internet makes it much easier to commit a crime covered by § 2A3.2 in that it allows a predator anonymous access to a large pool of potential victims.

Rice contends that his use of the Internet in connection with his criminal activity does not present exceptional circumstances that would make his conduct different than the typical set of cases encompassed by § 2A3.2. He argues that the harm caused by statutory rape is the same, regardless of whether the perpetrator initiated contact in person, by telephone, or over the Internet. Thus, he suggests there is no reasonable basis for making a sentencing distinction.

We disagree. As illustrated by Rice's conduct, the use of the Internet fosters anonymous, predatory conduct that is not typical of the conduct encompassed by the statutory rape guideline. The Internet is not merely an alternate means for contacting and communicating with young victims. Rather, the Internet provides a powerful new tool for predators to locate potential victims in the first place. With the advent of internet "chatrooms," adults seeking underage sexual partners have ready access to a nationwide pool of potential targets. As the district court observed, "[y]oung children all over America use the Internet to stay in contact with their friends, they engage in research for homework and otherwise to learn about the world in which they live." J.A. 135. The Internet provides a much more efficient way for an adult to identify and meet minors who fit a desired profile without the inherent practical difficulties of identifying a potential victim in person and then establishing contact. The anonymity of the Internet also affords a hedge against detection and an opportunity for an adult such as Rice to develop trust and pursue a relationship with the juvenile in private. Moreover, as the government points out, U.S.S.G. § 2A3.2 encom-

passes crimes involving interstate travel. The nationwide and even worldwide nature of the Internet unquestionably increases the likelihood of meeting a potential underage partner located across state lines.

Alternatively, Rice argues that in departing upward two levels for his internet usage, the district court was actually applying the 2000 version of the guidelines, in violation of the Ex Post Facto Clause. After Rice was sentenced under the 1998 Sentencing Guidelines, § 2A3.2 was amended to add a two-level enhancement "[i]f a computer or an Internet-access device was used to . . . persuade, induce, entice, or coerce the victim to engage in prohibited sexual conduct" or to "facilitate transportation or travel, by the victim or a participant, to engage in prohibited sexual conduct." U.S.S.G. § 2A3.2, cmt. n.6 (2000).

A sentencing court ordinarily uses the version of the guidelines "in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a) (2000). However, if the application of the current version "would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(b)(1). If a guideline is amended "after a defendant's offense but before sentencing," the district court should not apply it "if doing so would increase the sentence, because that would violate the Ex Post Facto Clause." *United States v. Heater*, 63 F.3d 311, 331 (4th Cir. 1995).

Although the 2000 Guidelines Manual was in effect at Rice's resentencing, the district court was clearly applying the 1998 version. The district court not only made this clear during the resentencing hearing, but the court's application of the 1998 Guidelines Manual is also evident from the fact that the court identified two of the three bases for departure at the original sentencing, which occurred prior to the amendments. Accordingly, we conclude there was no ex post facto violation.

## B.

Next, we consider the district court's two-level upward departure on the basis of the 43-year age disparity between Rice and his

intended juvenile partner. In so departing, the court noted that such a difference in age "carries a strong element of coercion." J.A. 140. Rice argues that, despite the tremendous age difference, there is nothing in the record to suggest that he attempted to coerce Matt. And in *Rice I*, we observed that Rice "never threatened or attempted to coerce 'Matt,'" and that we saw nothing in the record before us that would suggest "the proposed encounter would not have been consensual." 8 Fed. Appx. at 218.

Age disparity is a factor unmentioned by the 1998 Guidelines Manual as a basis for departure. Accordingly, the question is whether this circumstance removes Rice's case from the heartland of § 2A3.2. Unlike a statutory rape scenario involving, say, a 21-year-old male and his 16-year-old girlfriend, a proposed sexual encounter between a 56-year-old adult and a 13-year-old adolescent creates a much different and more dangerous situation. Typically, there are vast differences between a person Rice's age and one Matt's age in physical size and strength; mental and emotional development; life experience and, in particular, sexual experience; and material resources. In our view, these factors amount to an increased danger of physical injury to the juvenile, whether unintended or not, and an increased likelihood of psychological manipulation. Here, Rice attempted to gain Matt's trust from the beginning. Matt indicated that he was unsure about his own sexual orientation, and Rice, who asked to be called "Uncle Tom," offered to teach him. Rice also indicated that he could afford Matt exciting opportunities of a nonsexual nature as well. *See id.* at 217 n.3. Rice held himself out as a father figure who could "mentor" Matt in learning about his sexuality, and Rice emphasized that he would be careful given Matt's inexperience. Rice gave Matt a credit card number to use for long distance calls and sent pictures of his flashy car. At various times, Rice told Matt that he trusted him, worried about him and really cared for him.

Although Rice is correct that, in *Rice I*, we indicated that we perceived no intent on Rice's part to coerce Matt into sexual activity, our discussion on this point was set in the context of determining whether to apply the criminal sexual abuse guideline, U.S.S.G. § 2A3.1, which encompasses conduct "in which the victim, regardless of his or her age, has been coerced into sexual activity *by force or threats*." *Id.* at 217 (emphasis added). We did not reject the government's suggestion

that Rice employed "psychological force" to persuade Matt to meet with him; we merely observed that it was not appropriate for us "to consider this evidence *in the initial selection* of the proper guideline." *Id.* at 217 n.3. Our focus in *Rice I* was on whether Rice had "threatened 'Matt' or attempted to place him in fear or otherwise overcome his will such that the intended sexual encounter would have been non-consensual." Id. at 217.

We conclude that the more than forty-year age difference between Rice and his intended juvenile partner removes this case from the heartland of cases encompassed within the statutory rape guideline set forth in § 2A3.2.

Rice argues, alternatively, that the district court's two-level upward departure was the functional equivalent of applying the 2000 Guidelines Manual, which Rice argues would violate the Ex Post Facto Clause. Section 2A3.2 was amended to include an upward two-level adjustment if "a participant . . . unduly influenced the victim to engage in prohibited sexual conduct." U.S.S.G. § 2A3.2(b)(2)(B) (2000). If the participant is at least 10 years older than the victim, "there shall be a rebuttable presumption . . . that such participant unduly influenced the victim to engage in prohibited sexual conduct." U.S.S.G. § 2A3.2 cmt. n. 5 (2000). We reject this argument for the same reasons that we rejected Rice's contention that the upward departure based on the use of the Internet violated the Ex Post Facto Clause.

## C.

Finally, we consider the district court's two-level upward departure based on Rice's intent to engage in "anal intercourse with a person [Rice] believed to be a child of 13." J.A. 139-40. This circumstance, too, is unmentioned in the guidelines as a basis for departure. We cannot agree, however, that it removes the case from the heartland of § 2A3.2, which expressly covers violations of 18 U.S.C.A. § 2243. Section 2243 criminalizes the commission of "a sexual act with another person who . . . has attained the age of 12 years but has not attained the age of 16 years; and . . . is at least four years younger" than the defendant. 18 U.S.C.A. § 2243(a) (West 2000). A "sexual act" for purposes of this section includes "contact between . . . the

penis and the anus . . . upon penetration, however slight." 18 U.S.C.A. § 2246(2)(A) (West 2000). Accordingly, the act of "anal intercourse" with a 13-year-old falls squarely within the conduct prohibited by § 2243 and, in turn, falls squarely within U.S.S.G. § 2A3.2. We conclude that this particular factor is not alone enough to set this case apart from the heartland of cases described by § 2A3.2.*

### III.

For the reasons set forth above, we affirm the district court's two-level upward departure with respect to both Rice's use of the Internet and the age disparity between Rice and his intended victim, but we reverse as to the two-level upward departure based on Rice's intention to engage in anal intercourse with a 13-year-old. We remand for resentencing in accordance with this opinion.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED*

---

*The government attempts to recast the district court's basis for departure as the "tender years" of the intended victim. We do not believe this is completely accurate. Each time the court identified this particular factor, it emphasized not only the purported victim's age but also the fact that Rice intended to engage in "anal intercourse" with a child of 13.