**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                    No. 98-4618

HEATHER REILLY,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis III, District Judge.
(CR-98-53-A)

Argued: March 5, 1999

Decided: April 21, 1999

Before WILLIAMS and MICHAEL, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion. Judge Williams wrote
a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Vincent L. Gambale, Assistant United States Attorney,
Alexandria, Virginia, for Appellant. Patrick Nicolas Anderson, LAW
OFFICES OF PATRICK N. ANDERSON, Alexandria, Virginia, for
Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Alex-
andria, Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Before us is the government's appeal from the district court's decision to depart downward from the Sentencing Guidelines on the basis of "extraordinary post-offense rehabilitation." The government contends that Heather Reilly does not qualify for this departure as a matter of law because her efforts at rehabilitation were entirely unremarkable. We affirm, concluding that the district court did not abuse its discretion in granting the downward departure.

I.

Reilly pleaded guilty to conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846. She qualified for the "safety valve" provision (18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2) that authorizes a sentence below the statutory mandatory minimum. Under the Guidelines her offense level was set at 21, which reflected a three-level reduction pursuant to § 3E1.1 for acceptance of responsibility. With her criminal history category of I, this would have produced a sentence range of 37 to 46 months.

District Judge T. S. Ellis III granted an eleven-level downward departure for "extraordinary post offense rehabilitative efforts." He based this decision on several factors. He noted that Reilly voluntarily left the conspiracy. She started a regular job working in a retail store and received positive evaluations. She began to attend church regularly and participate in church-sponsored youth activities and group counseling sessions. In addition, she moved in with her aunt for one month and participated in an informal recreational therapy program for drug users that her aunt ran. This therapy consisted of working in the aunt's rock-climbing gym and participating in group recreational activities on weekends. Drawing on his eleven years of experience as a district judge, Judge Ellis characterized these steps as "significant

2

and extraordinary" and granted the eleven-level downward departure. This reduced Reilly's offense level from 21 to 10, resulting in a sentence range of 6 to 12 months. The judge sentenced her to four months of imprisonment and four months of home confinement. The government now appeals the downward departure.

II.

We review a district court's decision to depart from the Sentencing Guidelines for abuse of discretion. Koon v. United States, 518 U.S. 81, 91 (1996).

Post-offense rehabilitation may potentially serve as the basis for a downward departure. United States v. Brock, 108 F.3d 31, 35 (4th Cir. 1997). However, such a departure is only proper if the rehabilitation efforts are "extraordinary." United States v. Barber, 119 F.3d 276, 281 n.4 (4th Cir. 1997). Because rehabilitation is already considered in the "acceptance of responsibility" guideline, U.S.S.G. § 3E1.1,* the rehabilitation departure should only be granted when the rehabilitation efforts are "present to such an exceptional degree that the situation cannot be considered typical of those circumstances in which an acceptance of responsibility adjustment is granted." Brock, 108 F.3d at 35. The departure must be "the exception, not the rule" and is only appropriate when "the unique circumstances presented . . . take the case out of the heartland of the applicable guideline and make the situation one in which a sentence outside the guideline range should result." Id. at 34 (citing Koon v. United States, 518 U.S. at 92-93).

We cannot say that the district judge abused his discretion in granting the downward departure. Judge Ellis reviewed the record carefully and repeatedly characterized Reilly's post-offense rehabilitation efforts as extraordinary. He supported this conclusion with extensive factual findings:

_____

*The Guidelines application notes state that voluntary withdrawal from criminal associations and "post-offense rehabilitative efforts (e.g., counseling or drug treatment)" are factors to be considered in determining whether a defendant qualifies for an acceptance of responsibility reduction. U.S.S.G. § 3E1.1, comment. (n. 1(b), (g)).

3

In the Court's view -- and I have considered the cases cited by the government and on both sides of the issue -- I am persuaded that, taking all of the factors into account, this is a case of exceptional or extraordinary efforts at post offense rehabilitation.

* * *

It appears to the Court that she [Reilly] made the decision to change her life, and that she took significant and positive steps toward doing it.

* * *

I do see, as the government counsel recognizes, that in now more than eleven years or so of service on the bench, I have seen a large number of defendants, and I have seen a great many who take some steps.

But what makes this case, I think, compelling to the Court is that at a very young age, on her own initiative, after involvement in this conspiracy for a fairly short period of time, she extricated herself from it and took fairly significant steps to change her life, succeeded in changing her life.

She did receive treatment, both from her aunt, that is, therapy rather than treatment, from her aunt and from the church; and she also recognized on her own that she needed to be employed and she needed to take pride in her job and she needed to do well in her job, all of which, in the Court's view, is evidence of extraordinary rehabilitative efforts.

By voluntarily seeking the kind of therapy she did, she has obviously made progress during the therapy. She has obviously been public about the origin of her problems. And she obviously has gotten employment, she has received good performance ratings, and she is also demonstrating that her life is different.

J.A. 140-43.

4

The judge scrutinized the informal therapy that Reilly received, finding it and other factors sufficient to support the downward departure:

> Now, it is true that neither the church nor her aunt are what the government would accept as certified drug abuse counselors and other types of psychological counselors. But the Court, after hearing the testimony [of the church pastor, one of the church elders, and Reilly's aunt], is satisfied that these individuals have substantial experience in this regard, and that I don't see a strong reason for distinguishing between, for example, some secular psychologist and some of the group therapy that she has had.

> . . . But what I look to see is whether or not there has been an extraordinary effort made.

> And the fact that she didn't go to some professional psychologist or some intensive drug treatment program is not particularly persuasive to me. What is persuasive is that before she was arrested she left the conspiracy. She determined that she would change her life. She then took very significant steps towards that end, and so far as this record is concerned, it appears that she has succeeded in large measure.

> And I am not unimpressed with the qualifications of her aunt. It is clear that her aunt has had a great deal of experience with troubled youth and youth who take drugs, and that she undertook the same kind of therapy with her niece that she would with other troubled people, which is to provide a highly structured environment for them, to begin taking steps to see that they question their own behavior and their own feelings, and to develop some sort of insight so that they can decide, so that they can have some sense of why they act the way they do.

J.A. 140-42.

5

The judge recognized that a downward departure for post-offense rehabilitation is only appropriate when the defendant's efforts at rehabilitation are extraordinary. See Brock, 108 F.3d at 35. Based in part on his eleven years of experience as a judge, he concluded that Reilly's efforts met the standard. And, he carefully enumerated the reasons why he found Reilly's endeavors to be extraordinary. Given the district judge's correct understanding of the legal standard and his extensive findings, we cannot say that he abused his discretion in granting the downward departure.

III.

Because the decision of the district court to grant the downward departure was not an abuse of discretion, the sentence is

AFFIRMED.

WILLIAMS, Circuit Judge, dissenting:

As the majority admits, this Court has consistently held that in order to justify a downward departure from the Sentencing Guidelines, post-offense rehabilitation must be extraordinary. See, e.g., United States v. Barber, 119 F.3d 276, 280-81 (4th Cir. 1997) (en banc); United States v. Brock, 108 F.3d 31, 35 (4th Cir. 1997). If it is not, then granting a downward departure is an abuse of discretion. Because I am convinced that the post-offense rehabilitation in this case was not extraordinary, I must respectfully dissent.

The majority relies heavily on the district court's careful enumeration of "the reasons why he found Reilly's endeavors to be extraordinary." Ante at 6. We require detailed recitation of the underlying facts so that the propriety of the downward departure can be reviewed upon appeal. See United States v. Wilson, 114 F.3d 429, 433 (4th Cir. 1997) ("[T]he determinative inquiry is whether the individual facts that the district court is considering are taken into account in the heartland of situations encompassed within the applicable guideline."). The majority apparently affirms the district court's finding of extraordinary rehabilitation based upon the following factors: Reilly's young age; Reilly's voluntary departure from the conspiracy; the therapy Reilly

6

received through her aunt and church; and finally, the fact that Reilly secured employment and performed well. None of the factors taken individually or collectively is sufficient to constitute extraordinary rehabilitation that would take this case out of the heartland of the Sentencing Guidelines.

I must first note that using Reilly's age as a factor in granting a downward departure is discouraged by the Sentencing Guidelines and should only be considered in rare circumstances. See U.S. Sentencing Guidelines Manual § 5H1.1 (1998) ("Age (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."); see also United States v. Summers, 893 F.2d 63, 69 (4th Cir. 1990) (noting that § 5H1.1 of the Sentencing Guidelines specifically states that youth should not ordinarily be taken into account in a sentencing departure decision). At the time of her involvement with the conspiracy, Reilly was eighteen years old. The district court, however, gave no reason why Reilly's age was a factor in finding extraordinary rehabilitation and I can find no reason, especially in contravention of the stated policy of the Sentencing Guidelines, why it would be.

As to Reilly's voluntary departure from the conspiracy and the therapy she received through her aunt and church, the Government correctly points out that these factors were considered by the district court when it adjusted the offense level for her acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines. The application notes to § 3E1.1 specifically state that "voluntary termination or withdrawal from criminal conduct or associations" and rehabilitative efforts such as counseling are taken into account in granting a reduction in the offense level. U.S. Sentencing Guidelines Manual § 3E1.1, comment. (n.1(b) & (g)) (1998). Reilly already received credit under the Guidelines for the positive steps she took in withdrawing from the conspiracy and seeking treatment. In order for these same actions to be appropriately considered for an additional downward departure, they must be present in "an exceptional or extraordinary degree." Barber, 119 F.3d at 281.

Neither Reilly's withdrawal from criminal conduct and associations nor her counseling/therapy were exceptional. Certainly Reilly withdrew from the conspiracy before there was any threat of prosecu-

7

tion, but she indicated that her withdrawal was motivated at least in part by fear of her co-conspirators, hardly evidence of a reformed mindset. (See J.A. at 133.) Furthermore, she undertook no other extraordinary actions concurrent with the withdrawal such as informing law enforcement about the conspiracy. In no way did Reilly's voluntary withdrawal exceed the criterion set forth under §3E1.1 of the Guidelines.

Nor can Reilly's counseling or therapy be termed extraordinary or exceptional. Reilly resided for approximately one month with her aunt, whom the district court determined "had a great deal of experience with troubled youth and youth who take drugs." (J.A. at 141.) For the relatively short time that Reilly was there, she engaged in an informal program of recreational therapy, which consisted in part of performing menial tasks at her aunt's rock-climbing facility. After returning to her parents' home, Reilly began regularly to attend church-sponsored meetings that provided positive guidance in her life. I do not mean to denigrate these activities, but they simply do not consist of the rigorous rehabilitative efforts one would expect of extraordinary rehabilitation that is deserving of a substantial downward departure.

Finally, the fact that Reilly obtained a job and received good performance evaluations adds little to her case. Reilly held similar jobs throughout high school and just before she moved in with her aunt. Her employment does not indicate significant, much less extraordinary, post-offense rehabilitation.

Viewing Reilly's post-offense activities, individually or collectively, does not reveal extraordinary rehabilitation that would support an eleven-level downward departure in addition to the reduction in offense level that Reilly already received for "acceptance of responsibility" under the Sentencing Guidelines. Because the departure was an abuse of the district court's discretion, I dissent.