UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

ANDREW BOURNE, a minor by and
through his parents, next friends
and natural guardians, Chris Bourne
and Maggie Bourne,
          *Plaintiff-Appellant,*

v.

E. I. DUPONT DE NEMOURS &
COMPANY, d/b/a DuPont, a Foreign
Corporation,
          *Defendant-Appellee.*

No. 02-1469

────────────

TRIAL LAWYERS FOR PUBLIC JUSTICE,
          *Amicus Curiae.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CA-97-90-2)

Argued: October 29, 2003

Decided: January 27, 2004

Before WIDENER, NIEMEYER and GREGORY, Circuit Judges.

────────────

Affirmed by unpublished per curiam opinion.

────────────

## COUNSEL

**ARGUED:** James Louis Ferraro, FERRARO & ASSOCIATES, P.A.,
Miami, Florida, for Appellant. Patrick William Lee, CROWELL &

MORING, L.L.P., Washington, D.C., for Appellee. **ON BRIEF:** Scott S. Segal, THE SEGAL LAW FIRM, Charleston, West Virginia, for Appellant. William L. Anderson, Emma K. Burton, CROWELL & MORING, L.L.P., Washington, D.C.; David B. Thomas, ALLEN, GUTHRIE & MCHUGH, Charleston, West Virginia, for Appellee. Arthur Bryant, TRIAL LAWYERS FOR PUBLIC JUSTICE, Oakland, California; Alexander A. Reinert, KOOB & MAGOOLAGHAN, New York, New York, for Amicus Curiae.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

### I.

Plaintiff Andrew Bourne ("Bourne"), a minor, is suing the manufacturer of a pesticide called "benlate" (active ingredient is "benomyl"), which he alleges caused his teratogenic birth defects. In the district court, Bourne offered expert evidence from two credible and qualified experts to establish both specific and general causation. The district court, however, excluded the testimony of Bourne's experts finding it unreliable under *Daubert* and Rule 702 of the Federal Rules of Evidence. After excluding Bourne's only expert testimony on causation, the district court granted E.I. DUPONT DE NEMOURS AND COMPANY, INC.'s, ("DuPont"), motion for summary judgment and dismissed the case. We AFFIRM.

### II.

Bourne by and through his parents, Christopher Bourne ("Mr. Bourne") and Maggie Bourne ("Mrs. Bourne"), all residents of Essex, England, filed this action in February of 1997 against DuPont alleging that Mrs. Bourne's exposure to the DuPont-manufactured agricultural

fungicide Benlate, while pregnant with Bourne, caused him to be born with severe birth defects.

Mrs. Bourne contends that she purchased Benlate from a local nursery to use in her home garden in March of 1986. The Benlate was packaged in small sachets roughly the size of an individual-serving sugar packet. Each sachet contained 2.25 grams of Benlate powder, approximately 53% of which was comprised of Benlate's active ingredient, the chemical benomyl. Also supplied with the Benlate were separate sachets containing 3.0 grams of a surfactant (surface active substance) called "Activex." According to the directions contained in the package of Benlate, each sachet of Benlate powder was to be mixed with a sachet of Activex along with one UK gallon of water (approximately 4.5 liters) before application to plants.

Mrs. Bourne contends that she followed the instructions and mixed a sachet of the Benlate and a sachet of the Activex in a gallon of water. Mrs. Bourne says that she sprayed the entire gallon of the Benlate-Activex-water mixture (hereinafter "Benlate mixture") on her home garden every ten to twelve days from March through late-June, 1986. She testified at her deposition that she applied the Benlate mixture liberally to her beans, strawberries, and roses, using a watering can, and when the beans grew taller, using both a watering can and a hand sprayer. She testified that it took her approximately 45 minutes-to-one-hour to mix and apply the Benlate mixture to her plants.

Mrs. Bourne wore no gloves or protective face covering while working with the Benlate. She testified that some Benlate powder got on her hands when she prepared the Benlate mixture and that the Benlate mixture got on her hands and perhaps her legs as she stirred the Benlate mixture. She further testified that when she applied the Benlate mixture to her plants, the solution would get on her hands, legs, feet, and possibly her face. She bathed every day or every other day.

Mrs. Bourne became pregnant with Bourne on or about May 5, 1986. The child was born on January 27, 1987, with bilateral clinical anophthalmia (the complete absence of eyes), hypogonadatropic hypogonadism (a pituitary disorder resulting in this case in small stature and underdeveloped genitalia), and mental retardation. Bourne

contends that his mother's repeated exposure to Benlate during critical periods in his fetal development caused or contributed to his birth defects.

### III.

This court reviews the decision of a district court to admit or exclude evidence for abuse of discretion. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999)(citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 139, 118 S.Ct. 512 (1997)). A district court abuses its discretion if its conclusion is guided by erroneous legal principles, *see id.* (citing *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035 (1996)), or rests upon a clearly erroneous factual finding. *United States v. Barber*, 119 F.3d 276, 283 (4th Cir. 1997) (*en banc*). Further, even if a district court applies the correct legal principles to adequately supported facts, the discretion of the trial court is not boundless and subject to automatic affirmance. *Westberry*, *supra*, (citation omitted). This court is obliged to review the record and reasons offered by the district court and to reverse only if the "court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.*

### IV.

The introduction of expert opinion testimony is governed by Federal Rule of Evidence 702, which provides, in pertinent part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise.

FED. R. EVID. 702 (West 2002).

Expert testimony is admissible under Rule 702, then, if it concerns (1) scientific, technical, or other specialized knowledge that (2) will aid the jury or other trier of fact to understand or resolve a fact at issue. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592

(1993). The first prong of this inquiry necessitates an examination of whether the reasoning or methodology underlying the expert's proffered opinion is reliable—that is, whether it is supported by adequate validation to render it trustworthy. *Westberry*, 178 F.3d at 261 (citing *Daubert*, 509 U.S. at 590). The focus of the first prong is therefore on the issue of reliability. The second prong of the inquiry requires an analysis of whether the opinion is relevant to the facts at issue. *Id.* (citing *Daubert*, 509 U.S. at 591-92). The focus of the second prong has, thus, been described as "fit."

Ultimately, an expert's testimony is admissible under Rule 702 if it "rests on a reliable foundation and is relevant." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (internal quotation marks omitted). The district court's role in considering the admissibility of expert testimony is that of a "gate-keeper" whose prime task is to assess whether the proffered evidence is sufficiently reliable and relevant. *See id.* at 1174. As the gate-keeper, the district court's inquiry is "a flexible one" focusing on the "principles and methodology" employed by the expert, not on the conclusions reached. *Daubert*, 509 U.S. at 594-95 (emphasis added). In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will, however, depend upon the unique circumstances of the expert testimony involved. *Kumho Tire Co.*, 526 U.S. at 149-50.

As the gate-keeper, the court must remain conscious of two guiding, and sometimes competing, principles. *Westberry*, 178 F.3d at 261. On the one hand, the court should be mindful that Rule 702 was intended to liberalize the introduction of relevant expert evidence. *Id.* (citing *Cavallo v. Star Enter.*, 100 F.3d 1150, 1158-59 (4th Cir. 1996)). Thus, the court need not determine that the expert's proffer is irrefutable or certainly correct. *Id.* In liberalizing the standard for admission, *Daubert* reminds us that, as with all other admissible evidence, expert testimony is subject to being tested by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. On the other hand, *Daubert* cautions that the district court must recognize that due to the difficulty of evaluating their testimony, expert witnesses have the potential to "be both powerful and quite misleading."

*Id.* at 595 (internal quotation marks omitted). Where the expert proffer has a greater potential to mislead than to enlighten, that evidence may properly be excluded. *Westberry* (citing *United States v. Dorsey*, 45 F.3d 809, 815-16 (4th Cir. 1995)).

## V.

The district court's well-reasoned opinion properly balances the two guiding, and sometimes competing, principles underlying the *Daubert* analysis. *Westberry*, 178 F.3d at 261. When excluding the proferred testimony, the district court properly exercised its "gatekeeper" function by focusing on the methodology employed by the experts rather than the conclusions they reached. *Daubert*, 509 U.S. at 594-95. Thus, we can not say that the district court abused its discretion. On the reasoning stated by the district court, as reported at *Bourne v. E.I. DuPont De Nemours & Company, Inc.*, 189 F.Supp.2d 482 (S.D.W. Va. 2002), we therefore AFFIRM.

*AFFIRMED*